FRANCES VOCELKA, APPELLANT, V. JAMES VOCELKA APPELLEE.

19 N. W. 2d 363

FILED JUNE 22, 1945. No. 31943.

*J. V. Benesch, Crofoot, Fraser, Connolly & Stryker,* for appellant.

*B. J. Boyle,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL, and WENKE, JJ.

WENKE, J.

The plaintiff, Frances Vocelka, commenced this divorce action in the district court for Douglas county against the

defendant, James Vocelka, on August 11, 1944. From a decree granting her a divorce upon the grounds of extreme cruelty, awarding her the custody of their son, Edward J. Vocelka, aged four years, allowing $25 per month for the child's support and maintenance, granting her certain personal property fully set out in the decree, and awarding her the properties located at 2706, 2708 and 2807 Ed Creighton avenue, Omaha, Douglas County, Nebraska, the plaintiff appeals.

This decree awarded the defendant certain personal property and fixtures fully described in the decree, lots 6, 7 and 8, block 12, Kountze addition, Omaha, Douglas County, and the south half of lot 13 in Dee's addition to South Omaha, Sarpy county, all in Nebraska.

Appellant complains of the court's division of the property and its refusal to award her alimony.

The parties were married on January 10, 1939, and to this union a son, Edward J. Vocelka, was born. This is not the first marriage of either party. Appellant had two previous marriages. To her first marriage two children were born, Frank and Marie, who, at the time of the trial, were 17 and 11 years of age. At the time of the marriage they lived with their mother. The first husband was accidentally killed in 1934. She remarried in 1936 and this marriage lasted only about 10 months and ended in a divorce. No children were born to this union. The appellee, who was 56 years of age at the time of trial, was also previously twice married. His first wife died leaving him with six children. His second marriage ended in divorce. No children were born as a result of this union. At the time of this marriage four of his children were living with him.

At the time of the marriage both parties were possessed of property. Appellant owned two houses located at 2706 and 2708 Ed Creighton avenue, which were free of debt, and a property located at Thirteenth and William streets and referred to as the Golden Goose. This latter property was quite heavily encumbered. She also had $360 on deposit in the bank. Appellee owned the property described

as lots 6, 7 and 8, block 12, Kountze addition, Omaha, located at 1730-1732 South Thirteenth street and the Sarpy county place. He also owned properties located at 4115 South Thirteenth street and 1605 Elm street in Omaha. The latter of these two properties was encumbered for $1,000. He owned the fixtures in the tavern located at 1730 South Thirteenth street, which he operated in his son's name, together with the stock necessary to conduct the business. Also, the household furniture upstairs where his family lived. This property at 1730-1732 South Thirteenth street appears to be a two-story building with double front in which a tavern was being operated at 1730 and a grocery at 1732. It will herein be referred to as the tavern property. Upstairs were rooms in part of which the family lived and part of which were rented to others.

Although a carpenter by trade, the appellee was engaged in operating a tavern. Prior to and at the time of the marriage he was operating it by securing a liquor license in his son's name. This was necessary for the reason that he was not a citizen and therefore ineligible. After their marriage, when the license expired on May 1, 1939, they took out a new license in appellant's name and continued to do so for four years. They operated this business, which included a restaurant, together. He did the managing and both worked in the tavern. She cooked, cleaned, waited on customers and did whatever was necessary besides taking care of their home, which was upstairs. They remodeled the building by putting a dance floor in the space formerly occupied by the grocery and included it in their business. The proceeds of the business were used to operate it, to repair and improve the tavern property, to add fixtures in the tavern, and for family expenses.

In 1943 the Nebraska Liquor Control Commission refused appellant a license and one was taken out in the name of McLaughlin. However, it appears that appellee was a secret partner in this setup. McLaughlin had his license revoked about two and one-half months later. It appears appellant advanced some $400 for McLaughlin to purchase liquor stock but she was never able to get this back.

In addition the appellant, prior to the marriage, loaned $100 to the appellee to enable him to buy stock for the tavern. Later, at the time of renewing the license in 1941, she advanced $505 for that purpose. In May of 1941 she advanced him $300 to pay off a mortgage on his car.

However, she did not sell McLaughlin the stock of liquors which they had on hand when a license was refused her. Later, when a Mrs. Whitcomb obtained a license on May 1, 1944, and operated the tavern, she sold it to her and received $992 therefrom. This sum she retained and invested in bonds for her children.

Appellant retained her two residences on Ed Creighton avenue. The same were kept in good repair, and the taxes assessed thereon paid. She collected the rents therefrom. She testified she used considerable of these rents to buy clothes for herself and her children. In 1940 she sold the property at Thirteenth and William, referred to as the Golden Goose, and received for her equity $3,000. She invested $1,600 of this in a property located at 2807 Ed Creighton avenue, which is awarded her in the decree; used $300 to buy some furniture, which is awarded her in the decree; and used some $400 to fix up the place where they lived in the tavern property. What was done with the balance is not clear. However, her account book with the Union Building and Loan Association shows she had on deposit there as late as March 17, 1944, the sum of $1,611.82. She withdrew on that date $1,602.58.

Appellee sold two of his properties after the marriage. These were the properties located at 4115 South Thirteenth street and 1605 Elm street. What he received for them is not shown and just what he did with the proceeds is not too clear, except that he used some of it to repair and improve the tavern property, particularly when they remodeled it and put in a place to dance. This remodeling cost somewhere between $1,400 and $1,600. Other improvements and betterments were made to this property and the cost thereof was either paid from the proceeds of the sale of these properties or taken out of the income of

the business. It appears that all the properties of the parties were kept in fairly good condition.

The record is none too complete as to the value of the real property and the income therefrom. Appellant testifies the two houses at 2706 and 2708 Ed Creighton avenue are worth $4,400. They rent for $45 per month. She purchased the property at 2807 Ed Creighton avenue for $4,000. Its rental value is not shown. The only testimony as to the value of the tavern property is appellant's following answer: "Well, I don't know. Maybe he can sell it for $15,-000.00." Mrs. Whitcomb pays $125 per month rent for the first floor of the tavern property. There are some rooms upstairs, in addition to those occupied by the appellee as a home. These have, from time to time, been rented but are apparently not very desirable. The rental income or value is not shown for the Sarpy county property.

The appellee also has two music boxes from which he receives some income. Appellant testifies this amounts to $60 per month.

In addition to the property herein set forth it appears appellee, at the time of the trial, had $155 in cash, a $100 bond, the fixtures in the tavern and his household furniture.

While the evidence shows the appellee to be a carpenter by trade, he had not, as far as the record shows, engaged therein except to make repairs to the several properties of the parties. He is about 57 years of age and whether or not he is capable of again engaging therein is not apparent from the record.

We stated the rule applicable to the questions here involved in *Martin v. Martin*, 145 Neb. 655, 17 N. W. 2d 625, as follows: " * * * we apply the rule as stated in *Hild v. Hild*, 135 Neb. 896, 284 N. W. 730: 'In determining the question of alimony or division of property as between the parties, the court, in exercising its sound discretion, will consider the respective ages of the parties to the marriage, their earning ability, the duration of, and the conduct of each during, the marriage, their station in life, the circumstances and necessities of each, as well as their health and

physical condition, and whether the property was accumulated before or after the marriage, and from all of such elements the court, in allowing or refusing to allow permanent alimony, will determine the rights of the respective parties and all other matters pertaining to the case.'" And to the same effect in somewhat different language in *Lippincott v. Lippincott,* 144 Neb. 486, 13 N. W. 2d 721, as follows: "In fixing the amount of permanent alimony the court will take into consideration the estate of each party at the time of the marriage, their respective contributions since, the duration of the marriage, the wife's loss of her interest in the husband's property by virtue of the divorce, the social standing, comforts and luxuries of life which the wife would probably have enjoyed except for the enforced separation, the conduct of the parties leading up to the divorce and to which party the divorce is granted, their age and condition of health, and all other facts and circumstances, and award an amount in alimony which appears to be fair and equitable between the parties."

Applying these rules to the parties and their rights, particularly in view of the trial court's finding " * * * that the plaintiff (appellant here), Frances Vocelka, is a suitable and proper person to be awarded the care, custody and control of said minor child * * * ," we think the decree should be modified as follows: That in addition to the property division, as made by the trial court, the appellant be allowed the sum of $1,500 alimony, same to be payable at the rate of $25 per month, beginning with the date of the decree, December 18, 1944, until fully paid. That appellant be allowed an attorney's fee in the sum of $150 for services in this court.

AFFIRMED AS MODIFIED.