INEZ G. HAUSSENER, APPELLEE, V. ALFRED A. HAUSSENER, APPELLANT.

23 N. W. 2d 700
FILED JUNE 28, 1946. No. 32090.

*Lyle Q. Hills*, for appellant.
*Munger & Rhodes*, for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

Inez G. Haussener brought this action in the district court for Douglas County against Alfred A. Haussener. The purpose of the action was to obtain a divorce, an award of alimony, and a settlement of their property rights. Decree was entered in favor of the plaintiff. The defendant appeals from that part of the decree awarding plaintiff certain property, allowing her permanent alimony, and attorney fees.

For convenience the parties will be referred to herein as plaintiff and defendant.

The decree provides that the plaintiff is to have the property located at 9426 North Twenty-ninth Street in Omaha, Nebraska, worth $6,000; the household goods and furniture, worth $500; permanent alimony of $3,000 payable $100 per month commencing December 15, 1945, in addition to the temporary alimony of $80 per month from August 15, 1945, to December 15, 1945; and an attorney's fee of $200 in addition to a temporary attorney's fee of $75.

The decree provides that the defendant is to have the 1936 Buick coupe, worth $500; and two life insurance policies on his own life with surrender values of about $1,900.

With reference to seventeen $25 War Savings bonds, Series E, worth $18.75 each, the court found the parties had, by consent, divided these between themselves. The record shows the plaintiff received thirteen and the defendant four thereof.

In considering the question here involved the applicable rule is stated in Vocelka v. Vocelka, 146 Neb. 268, 19 N. W. 2d 363, as follows: "In deciding the question of alimony or division of property as between the parties the court, in exercising its sound discretion, will consider the respective ages of the parties, their earning ability, the duration of and the conduct of each during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, whether the property was accumulated before or after the marriage and any and all other circumstances bearing upon the question and from all of such elements determine the rights of the respective parties." See, also, Martin v. Martin, 145 Neb. 655, 17 N. W. 2d 625.

At the time of the trial the plaintiff was 53 and defendant 49 years of age. They were married on June 20, 1931, in Omaha. No children were born to this marriage. However, both had been previously married. Plaintiff was a widow by reason of her first husband's death on April 7, 1930, and had a son by this former marriage who was 32 years

of age at the time of trial. Defendant was a divorcee and had a son by his former marriage who was 26 years of age at the time of trial.

At the time these parties were married the plaintiff, with her son, owned a residence located at 8002 North Twenty-ninth Street in Omaha and she owned the household goods and furnishings therein. She had inherited this from her first husband. It was in this residence that the parties resided after their marriage and where they continued to live until 1938.

Defendant was, at the time of their marriage, employed by the Union Pacific Railroad and worked in its yards in Council Bluffs, Iowa. He was a yardmaster at the time of their marriage but shortly thereafter, because of his health, transferred to the job of a switchman and worked at that job until about 1941 for an average pay of between $200 and $250 per month. Outside of $40 per month, which he was required to pay until 1939 under the terms of the decree terminating his first marriage, his salary was used to support the home. In 1941, he became a general yardmaster and received as pay $340 per month; in November 1943, he became assistant terminal trainmaster at $400 per month; and in April 1945, he became terminal superintendent at $471.87 per month. After deductions of various kinds, including federal income tax, he receives a net of approximately $320 per month from his present salary.

It appears that defendant, outside of his job and personal effects, had no property at the time the parties were married.

After living in the home of plaintiff until 1938, the parties then moved to an acreage, which they purchased, located some three miles north and west of Florence. At this time plaintiff sold her interest in the residence located at 8002 North Twenty-ninth Street in Omaha and received $3,500 for her half interest. At or about this time she also received $500 from the sale of property she owned in South Dakota. They fixed up the acreage which appears

to have been badly run-down. In 1940, they traded it for the property located at 9426 North Twenty-ninth Street in Omaha which is the property awarded plaintiff. They moved from the acreage to this property and continued to live there until they separated in April 1945. It was rented at the time of trial. This property seems to be worth about $6,000 to $6,500.

Just how much plaintiff put into this property from her own funds is not entirely clear but she did put a substantial amount into the purchase of the acreage which was traded in on this property.

The parties continued to use the household goods and furnishings owned by the plaintiff at the time of their marriage. It appears that the only additions thereto were a bedroom suite, a carpet, and a table.

In addition to the money the plaintiff received from the sale of her interest in the residence and the South Dakota property, she received $1,500 in 1932 from the estate of her aunt in Vermont, and she received from the trust funds held by the Omaha National Bank from the estates of E. J. and A. B. Hunt the sum of $100 per month from June 1931, to June 1938, and thereafter the sum of $50 per month until June 1943, when the trust terminated. She then received an additional sum of $1,600 therefrom.

During the period from 1932 to 1938 plaintiff's son was attending the University of Nebraska. While plaintiff was not paying all of his expenses she was clothing him, furnishing him with spending money, and gave him a Dodge coach for his personal use. This car was not new. Just how much she spent on her son is not shown in the record.

The parties stipulated that at the time of the trial the plaintiff had in her own name $8,100 in securities, stocks, and bonds.

The parties lived well and, outside of the alimony payments he was required to make, all of defendant's income went into the family funds. Plaintiff was, at the time of the marriage, possessed of a considerable estate. From the

sale of property and the income of the trust she came into possession of approximately $18,500 during the time they were married of which she retains $8,100. Outside of what she gave to her son while he attended the University, the amount of which is not shown, the balance of $10,400 went into the family finances. As is common while people are living in a peaceful relationship as husband and wife no accurate accounting thereof was kept and outside of the evidence of payment at the time the acreage was purchased it cannot be determined just how much of this was used for the purchase of any particular item.

With reference to the seventeen $25 War Savings bonds, Series E, the record does not show they were divided by the parties but in our final determination herein we will take into consideration the fact that the plaintiff received thirteen and the defendant four thereof.

The record discloses that the defendant has two insurance policies on himself, the cash surrender values of which the court found to be about $1,900. These two policies do not appear in the record nor is there any evidence as to the cash surrender value of either.

Based on the facts as found in the record, taking into consideration all of the factors applicable under the principle as herein set out, we think that by giving the plaintiff in addition to the $8,100 of securities, bonds, and stocks which she owned at the time of trial, the property located at 9426 North Twenty-ninth Street worth approximately $6,000 to $6,500, the household goods and furniture worth $500, and the thirteen $25 War Savings bonds, Series E, that she is sufficiently provided for. This leaves the defendant with the ownership of the Buick coupe, worth approximately $500, two insurance policies, four $25 War Savings bonds, Series E, and his job. We find that the decree of the lower court should be modified to the extent that the plaintiff be denied any permanent alimony.

As to the question of costs and the award of attorney's fees in the court below they are approved. In addition

thereto the plaintiff is awarded an attorney's fee for services of attorney in this court in the sum of $150 which is taxed as costs and all costs, including those on this appeal, are taxed to defendant.

The decree of the lower court is therefore directed to be modified by the elimination of the allowance of $3,000 as permanent alimony and in all other matters affirmed. Plaintiff is allowed $150 attorney fees in this court to be taxed as costs and all costs, including those on this appeal, are taxed to defendant.

AFFIRMED AS MODIFIED.