ANNETTE M. TRIMBLE, APPELLANT, V. FRANKIE CLEVELAND TRIMBLE, JR., APPELLEE.

144 N. W. 2d 171

Filed July 22, 1966. No. 36194.

Bosley & Bosley, for appellant.

Daniel E. Owens, for appellee.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and MURPHY, District Judge.

CARTER, J.

Plaintiff, Annette M. Trimble, brought this suit for a divorce against the defendant, Frankie Cleveland Trimble, Jr., on the ground of extreme cruelty. The trial court granted a divorce to the plaintiff and made a division of property between the parties. Plaintiff has appealed.

The only question involved in this case is the correctness of that part of the trial court's decree in making an award of property to the plaintiff. The parties were married on May 23, 1936, and have resided in McCook for many years. Two children were born to the marriage, a son 25 years of age and a daughter who became 21 years of age less than a month after the entry of the divorce decree. At the time of trial plaintiff was 50 and the defendant 49 years of age.

The evidence shows that plaintiff has been employed as a secretary since 1954 and is presently earning $85 per week in such employment. Plaintiff was the beneficiary of an inheritance of $10,000. She used $1,200 of it to pay bills and gave defendant amounts of $2,000, $750, and $600 for his personal needs. She spent $2,100 for an automobile. She now has $5,000 invested in corporation stock and a savings account of $2,050. Her bank account was $350. She owes $464 on the automobile. Plaintiff has supplemented a bequest of $4,000 to each of the two children to complete their education. She paid $500 on the purchase of an automobile for the son, the defendant making the subsequent payments of $70 per month thereon.

Defendant at the time the suit for divorce was filed was the warehouse branch manager of the Fleming Company, a wholesale grocery concern. His salary was $550 per month and a bonus of 7 percent of earnings. The bonus in 1964 was $1,740. Defendant has since

been employed by the Fleming Company in Lincoln at a salary of $550 per month without a bonus arrangement. He owns an automobile valued at $1,500. Prior to his transfer to Lincoln defendant owned and operated the Midwest Credit Service in McCook, which he abandoned when transferred to Lincoln. In 1963, 1962, and 1961, the profits of this business were $5,000, $4,000, and $3,000, respectively. Plaintiff attempted to continue the business without financial success. Defendant testified that he owed a $1,300 note at a McCook bank, $1,600 to a building contractor, and a note of $6,105 to his mother. He has a bank account of $190 and a current pay check of $200. He owns no other property except the family home, some golf clubs, and hunting and fishing equipment worth $200. The family home was valued at from $12,000 to $12,500 which was subject to a mortgage of $5,295.40. The income of both parties appears to have been used up for living expenses.

On the foregoing evidence the trial court made the following division of property: The plaintiff was awarded the family home subject to the encumbrance thereon, all the household furniture owned by the parties, plaintiff's bank account and savings account, her automobile, her personal effects, and the Midwest Credit Service business. Defendant was awarded his automobile, his checking account, his current paycheck, and his golf, hunting and fishing equipment. Defendant was required to pay all existing debts of the parties except the encumbrances on the family home and plaintiff's automobile. The costs of the action and an attorney's fee of $150 were taxed to the defendant.

The plaintiff asserts that the division of property was inequitable to the extent of $5,000 which she asks this court to grant her.

At the time of the trial of the divorce proceeding the parties had been married 29 years. Plaintiff had been employed since 1954 and had earned from $60 to $85 a week during that period. Defendant was

earning $550 per month and substantial bonuses for at least 2 years prior to the divorce proceeding. Defendant's total income for 1964 from salary, bonus, and profits from Midwest Credit Service amounted to $10,036.98 and the annual salary of plaintiff amounted to $4,335. Plaintiff had inherited $10,000 and had remaining the sum of $7,000. Most of the reduction of her inheritance was due to the giving of money to defendant to pay his personal obligations. The testimony is that the earnings of the parties went for living expenses. Defendant still owed $1,300 at the bank and the $1,600 downpayment to the seller of the home they purchased. It is true that the parties assisted in the education of the two children over and above the $4,000 that each of the children inherited for their education.

The precipitating cause of the divorce was the excessive drinking of intoxicating liquors by the defendant and his abuse of the plaintiff directly caused thereby. There is no indication of fault on the part of the plaintiff. The income of the parties was substantial. The parties were apparently in good health. They apparently suffered no financial losses, nor suffered any emergent situations that absorbed their earnings. Still the defendant was in debt to the extent noted, the earnings of plaintiff were expended, and her inheritance was reduced from $10,000 to $7,000. The defendant was a law school graduate and was admitted to the bar, although he had never engaged in the practice of law. Plaintiff had worked continuously for 11 years and contributed all her earnings to the marriage. She still works, although the life of the nonprofit association by whom she is employed is uncertain. Defendant is earning $550 per month with reasonable certainty that his employment will continue. The plaintiff is given the equity in the home, the remainder of her inheritance amounting to $7,000, the equity in the automobile which she purchased, and the furniture in the home, the value of which is not shown. Under the circumstances here

shown it would appear that plaintiff is entitled to the restoration of her inheritance in addition to the joint property of the marriage that was awarded to her. We think the decree should be modified by allowing plaintiff an additional $3,000 to be paid by the defendant on such terms and conditions as the trial court shall prescribe.

In Malone v. Malone, 163 Neb. 517, 80 N. W. 2d 294, we said: "We have often said the fixing of the amount of the alimony rests, in each case, upon the sound discretion of the court." In Prosser v. Prosser, 156 Neb. 629, 57 N. W. 2d 173, we also said: "Alimony is awarded for the maintenance of the wife when the conditions exist that the statute requires. It is not an assignment of a portion of the husband's estate and it may, in fact, exceed the value of the husband's personal and real property. * * * It should not be allowed as a matter of sympathy to the wife or as penalty imposed for the misconduct of the husband."

We point out that defendant has an earning capacity of approximately $6,600 per year. It is true that the parties have accumulated very little in the way of assets. Defendant urges that he is heavily in debt. That he owes the bank $1,300 and $1,600 as the downpayment on the family home is unquestioned. His assertion that he owes his mother a note for $6,105 can be discounted by the fact that it is made out in his own handwriting, was in the possession of the defendant, and its existence was unknown to the plaintiff until the time of trial.

In determining how the property of the parties should be divided and in fixing an award of alimony, the relative fault of the parties is a material element. The age and health of the parties and the duration of the marriage are evidentiary facts to be considered. The social standing, comforts, and luxuries of life which the wife probably would have enjoyed are to be considered. The earnings of the husband and his earning potential

are very important when viewed in the light of the contributions made by the wife to the marriage. The principal asset awarded the wife is the family home. The substantial encumbrance upon it which the wife must pay creates a financial burden on the part of the wife with a limited earning capacity. Her only alternative is to sell the property and thereby defeat the purpose of awarding her the family home. In a consideration of all the factors, we think justice and equity require the additional allowance of $3,000, heretofore discussed. Swolec v. Swolec, 122 Neb. 837, 241 N. W. 771; Haussener v. Haussener, 147 Neb. 489, 23 N. W. 2d 700; Prosser v. Prosser, *supra*.

For the reasons given, the decree of the district court is affirmed as modified herein. Costs of the appeal are taxed to the defendant, including an attorney's fee of $250.

AFFIRMED AS MODIFIED.

MURPHY, District Judge, dissenting.

I respectfully dissent from the majority opinion herein, and in that connection I submit the following observations.

The question of the constitutionality of the applicable statutes, particularly sections 42-318 and 42-321, R. R. S. 1943, to the extent they may function as limitations upon the broad chancery powers of the district courts (Article V, section 9, Constitution of Nebraska) is a question which suggests itself, but was neither presented nor determined in the trial court, and which has not been presented here. In her brief, plaintiff relies upon those statutes. It is a question, therefore, which we should not now consider. Madison County v. Crippen, 143 Neb. 474, 10 N. W. 2d 260; De Lair v. De Lair, 146 Neb. 771, 21 N. W. 2d 498; Ebberson v. School Dist. No. 64, *ante* p. 119, 141 N. W. 2d 452; Read v. City of Scottsbluff, 179 Neb. 410, 138 N. W. 2d 471. Rather, we must accept the statutes as we find them.

The effect of the majority opinion is to award the

plaintiff a property settlement in excess of the net worth of the parties, and thus to require an invasion of defendant's future income. It goes far beyond any mathematical limitation previously expressed by this court, and beyond the limits of the statute.

The statute, section 42-318, R. R. S. 1943, provides: "Upon every divorce * * *, if the estate and effects restored or awarded to the wife shall be insufficient for the suitable support and maintenance of herself * * * the court may further decree to her such part of the personal estate of the husband and such alimony out of his estate as it shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case." While the terms "property settlement" and "alimony" are sometimes used interchangeably, here it is obvious that the word "alimony" is used in the proper sense of an allowance for future support. It seems to me that the statute allows an award of alimony only upon a finding that the property settlement made will be insufficient for the suitable support and maintenance of the wife, and permits consideration of the husband's "ability" only in that particular instance.

This is the effect of the statement quoted in the majority opinion from Prosser v. Prosser, 156 Neb. 629, 57 N. W. 2d 173, and with which I wholeheartedly agree as a statement of the controlling law of the case. While the majority opinion here treats of the added sum of $3,000 in the name of alimony, it is a restoration to plaintiff of an inheritance and not a provision for plaintiff's future support and maintenance. It appears to be a penalty assessed against the defendant for his fault in having caused the divorce, and because the parties lived beyond his means. Both the opinion and plaintiff's brief in this regard place their reliance not on the future, but on the basis of compensation for the past. I cannot agree that the statute either requires or permits this.

In any event, the decree of the trial court, from which the defendant does not appeal, grants to the plaintiff practically 100 percent of the current net assets of the parties. It grants defendant assets worth $2,090 and requires him to pay liabilities in the amount of $2,900, disregarding the note of $6,105 to his mother. It sufficiently provides for the suitable support and maintenance of plaintiff. It goes far beyond any past-stated mathematical limitation. I would deem it to be neither unjust nor unreasonable.