CHARLENE RISTOW, APPELLEE, v. ALFRED RISTOW, APPELLANT.

41 N. W. 2d 924

Filed March 30, 1950. No. 32744.

E. L. Mahlin, for appellant.

Spear, Lamme & Flory, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is a divorce action tried in the district court for Dodge County. The plaintiff Charlene Ristow was granted a decree of divorce from the defendant Alfred Ristow, the custody of their minor daughter Kristin Ristow, permanent alimony, and an allowance for child support. The defendant appeals from the allowance of alimony and child support on the ground that the amounts allowed were excessive and unreasonable under the evidence and constitute an abuse of judicial discretion. The plaintiff cross-appeals, contending the amount of alimony and child support allowed by the trial court was insufficient and inadequate under the evidence. No other issues are involved in this appeal.

For convenience we will refer to the parties as they were designated in the district court.

The case is here for trial de novo upon the issues presented by such appeal, as in other equity actions. See, § 25-1925, R. R. S. 1943; Lippincott v. Lippincott, 141 Neb. 186, 3 N. W. 2d 207, 140 A. L. R. 901.

It appears from the record that the parties were married February 28, 1947. At the time of their marriage the plaintiff was 20 years of age and the defendant 38 years of age. To this union one child, Kristin Ristow, was born on February 5, 1948. The defendant since 1936 has held the position of postmaster at Scribner, Nebraska, except for the period of time he was in the military service, from March 22, 1942, until May 23, 1946, when he was released from the service. The parties lived together 8 months and 8 days.

The decree, with reference to alimony and child support, provides that the plaintiff should be awarded the custody of Kristin, the minor daughter, the issue of the marriage; that the defendant should pay the plaintiff $2,000 as permanent alimony, payable in installments of

$50 a month commencing September 15, 1949, and continuing until the total sum is discharged; that the defendant should pay to the plaintiff as support money for Kristin Ristow the sum of $75 a month for 40 months commencing September 15, 1949; and that defendant should thereafter, during the minority of Kristin Ristow or until she marries or becomes self-supporting, pay the sum of $100 a month for her support and maintenance. The court further found that the defendant had the custody and possession of $520 belonging to the plaintiff which she received as a wedding gift from her parents and relatives, and that this sum should be forthwith paid to the plaintiff by the defendant. The costs of the action and attorneys' fees were taxed to the defendant.

In Swolec v. Swolec, 122 Neb. 837, 241 N. W. 771, this court said: "Permanent alimony is founded upon the right of the wife to such support from her husband as she would be reasonably entitled to expect, considering all of the circumstances of the parties, and this obligation continues after their legal separation. Permanent alimony was unknown at common law, and in this state is based upon section 42-318, Comp. St. 1929 (now section 42-318, R. S. 1943), which declares that the court may award 'such alimony out of his estate as it shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case.' It will be seen at once that, under such a liberal statute, the fixing of the amount of the alimony rests alone upon the sound discretion of the court. The first factor that should be taken into consideration is the financial circumstances of the parties, and all of the property owned by the parties should be considered and its value ascertained as of the time of the decree. Next, the income and productiveness of the property should be considered, together with the earning capacity and future prospects of the parties; the manner in which such property was acquired, whether through joint savings or by inheritance, and the contribu-

tions made by each, together with the value of the services rendered by each of the parties during their marriage. If evidence relating to the respective ages of the parties, the duration of and conduct during the marriage, their station in life, respective wants, circumstances and necessities, has been given, it should be considered, together with the health and physical condition of the parties, * * * ."

The case of Martin v. Martin, 145 Neb. 655, 17 N. W. 2d 625, holds: "In determining the question of alimony or division of property as between the parties, the court, in exercising its sound discretion, will consider the respective ages of the parties to the marriage, their earning ability, the duration of, and the conduct of each during, the marriage, their station in life, the circumstances and necessities of each, as well as their health and physical condition, and whether the property was accumulated before or after the marriage, and from all of such elements the court, in allowing or refusing to allow permanent alimony, will determine the rights of the respective parties and all other matters pertaining to the case." See, also, Hild v. Hild, 135 Neb. 896, 284 N. W. 730; Haussener v. Haussener, 147 Neb. 489, 23 N. W. 2d 700; Holmes v. Holmes, *ante* p. 556, 41 N. W. 2d 919.

The defendant's net salary as postmaster is $254 a month. He owns the fee simple title to property left him by his mother, she having died in 1943, subject to the life estate of his stepfather who at the time of trial was 69 years of age. Prior to his marriage he lived with his stepfather in the property, and after his marriage he and his wife lived with the stepfather in the property until the plaintiff left, about November 8, 1947, to go to the home of her parents who reside on a farm near Scribner, where she was living at the time of trial.

The defendant testified to certain items that constituted the value of his property. The trial court, in consideration of all of the evidence as to the property owned by the

defendant, apparently based the defendant's net worth to be between $4,000 and $5,000.

In determining the question raised in this appeal and cross-appeal with reference to permanent alimony and child support, we have taken into consideration the earning capacity of the defendant since he became of age in 1929, his salary as assistant postmaster and postmaster, and his salary and allowances as an army officer; in addition, the inheritance from his father's estate which finally amounted to $1,300; and the investments made by him, in his name, of four real estate mortgages totaling $10,700, $9,000 of which he testified belonged to his mother. The last of these mortgages was released in May 'of 1946.

We have also considered the testimony with reference to an oral agreement made by the defendant's mother in his presence and in the presence of his stepfather that after her death the defendant should pay to his brother Edward, living in California, the sum of $9,000. The mother's will bequeathed five dollars to Edward who had not seen his mother since 1931. She died in 1943. Edward testified that his mother told him in 1931 that he would receive some money after her death. He was unable to attend her funeral as he was in an induction center at that time and transportation was not available. The testimony of the defendant and his brother Edward is that $5,600 was paid to Edward in July of 1943, $400 in November of 1945, and $3,000 was paid to Edward July 12, 1946. The payments were made by checks. The testimony involving this $9,000 transaction, from a close inspection, is conflicting, not clear, and is doubtful. This is derived from the manner and form in which the amounts were alleged to have been paid and the uncertainty of the reason therefor as shown by the testimony of the brother Edward.

The record shows 24 shares of bank stock in defendant's name valued at $3,120, or $130 a share. Originally 12 shares of this stock came into defendant's name when his

stepfather transferred the shares to the defendant in 1944, to enable the defendant to become a director in the bank. There appears to have been a reissue of the stock later, so the 12 shares in fact constituted 24 shares. Defendant testified to repaying 12 shares to his stepfather, and due to the reissue of the stock he should have repaid 24 shares. The ownership of this stock and the evidence as to its value have been taken into consideration in determining this appeal.

We also take cognizance of the expenses of the last illness and burial of the defendant's first wife who departed this life in 1943. He testified that at that time he borrowed $3,000 from his stepfather to take care of this expense. This loan was repaid by the purchase of an automobile, the title of which was taken in his stepfather's name, in the amount of $2,300, leaving a $700 balance due his stepfather on the $3,000 debt. This transaction occurred December 9, 1947.

In addition we have considered the evidence with reference to the defendant's interest in the real estate left by his mother, the value of which, as shown by the record, ranged from $5,000 to $7,000 at the time of trial. We have also considered the amounts deposited by the defendant, the amounts withdrawn, the purchase of government bonds and the cashing of the same; also that the plaintiff was able to and did instruct in music during her marriage, from which she earned approximately $30 a month.

The defendant's evidence also shows that he destroyed canceled checks prior to his entry into the army and thereafter until approximately the last three or four months of 1946. The accounts and canceled checks of the defendant's stepfather were destroyed in a flood.

The afore-cited items constitute the basis to determine the allowance of permanent alimony and child support.

It is impossible, from the record, to determine with exactitude the value of the defendant's property at the time of the marriage. It is apparent that the defendant

owned more property at the time of his marriage to the plaintiff than his testimony discloses. It is likewise apparent that the evidence in behalf of the plaintiff as to the amount of property the defendant had at the time of the marriage is excessive.

After an analysis of the record in the light of the rules to be adhered to in determining what alimony shall be allowed or what division of property shall be made when a decree of divorce shall be awarded, we conclude the plaintiff is entitled to $4,000 permanent alimony to be paid at the rate of $50 a month from the date of September 15, 1949, the date fixed by the decree, until the entire amount is paid.

The decree with reference to child support is disproportionate to the actual needs of the child at this time. The child resides with her mother in her grandparents' home on a farm. The child support should be fixed in the sum of $50 a month, and the part of the decree fixing the amount thereof should be reversed with directions to the trial court to order $50 a month as support for the infant daughter of the parties, commencing on September 15, 1949, the date fixed in the decree, until the minor daughter is of legal age, or until the further order of the court as provided for by law in reference thereto.

In the event of a change of circumstances, the minor child is protected by the following applicable authority: Section 42-312, R. S. 1943, provides procedure for the revision and modification of such orders based upon the situation existing and made at the time of the trial, if the circumstances of the parties change or it shall be to the best interest of the child.

The amount fixed for the care of the infant daughter of the parties is wholly and exclusively child support, as distinguished from alimony or support of the plaintiff.

In determining provision to be made in a divorce case for support of an infant child of the parties, their status and situation and all the attendant circumstances should be considered, and an amount fixed in accordance with

the best judgment of the court. See Christoffersen v. Christoffersen, 151 Neb. 763, 39 N. W. 2d 535.

We therefore direct that the judgment be reversed and the cause remanded with directions that the decree of the trial court be modified in accordance with this opinion. Costs to be taxed to appellant.

REVERSED AND REMANDED WITH DIRECTIONS.