779 N.W.2d 130 (2010)
2010 ND 35
Jill PARISIEN, Plaintiff and Appellee
v.
Ronald PARISIEN, Defendant and Appellant.
No. 20090086.
Supreme Court of North Dakota.
March 5, 2010.
*131 Jerilynn B. Adams, Fargo, N.D., for plaintiff and appellee.
Larry J. Richards, Grand Forks, N.D., for defendant and appellant.
*132 SANDSTROM, Justice.
[¶ 1] Ronald Parisien appeals from a divorce judgment, arguing the district court erroneously awarded Jill Parisien permanent spousal support. We affirm.

I
[¶ 2] Ronald and Jill Parisien were married in 1975. They have four living adult children. Jill Parisien sued for divorce in September 2008 on the grounds of adultery, extreme cruelty, willful neglect, conviction of felony, and irreconcilable differences. The case was tried in December 2008, and the district court issued a memorandum opinion and judgment granting the divorce the same month. The district court found the marriage "failed due to the personal, marital and financial misconduct of Ronald."
[¶ 3] At the time of the divorce, Jill Parisien was 50 years old, earning $24,000 annually, and Ronald Parisien was 52 years old, with an income of $63,350 in 2008. Their primary assets consisted of seventy acres of land Jill Parisien had inherited from her family during the marriage, a home Ronald and Jill Parisien had built on that land, and Ronald Parisien's retirement account, which was worth $47,030. The district court awarded Jill Parisien property worth $110,050, less debt of $21,990, including the house and seventy acres of land she had inherited from her family. Ronald Parisien was awarded property worth $64,330, less debt of $19,695, including his retirement account.
[¶ 4] The district court said an award of permanent spousal support was more appropriate than a temporary rehabilitative spousal support award, because of Jill Parisien's age, health difficulties, and earning capacity. The court found Jill Parisien, who was 50 years old at the time of the divorce, had reached her maximum earning capacity at $24,000 a year, and to exceed that level of earnings, she would need to further her education, which at this stage of her life would not necessarily be rewarded. The district court awarded Jill Parisien $1,500 per month in spousal support for two years, and $1,250 per month in spousal support thereafter. Spousal support would terminate upon her death, her remarriage or cohabitation for more than sixty days, or her attainment of age sixty-five. The district court also ordered Ronald Parisien to continue to provide health insurance coverage for Jill Parisien until she is eligible for Medicare or remarries, whichever first occurs.
[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-27-01.

II
[¶ 6] Ronald Parisien argues the district court erred in awarding Jill Parisien spousal support.
[¶ 7] A district court may award spousal support to a party in a divorce action for any period of time. N.D.C.C. § 14-05-24.1. Spousal support determinations are findings of fact and will not be set aside unless clearly erroneous. Overland v. Overland, 2008 ND 6, ¶ 16, 744 N.W.2d 67. A finding of fact is clearly erroneous if it induced by an erroneous view of the law, if there is no evidence to support it, or if this Court is left with a definite and firm conviction a mistake has been made. Lindberg v. Lindberg, 2009 ND 136, ¶ 27, 770 N.W.2d 252. In awarding spousal support, the district court must consider the relevant factors of the Ruff-Fischer guidelines. Overland, at ¶ 16; *133 Fischer v. Fischer, 139 N.W.2d 845 (N.D. 1966); Ruff v. Ruff, 78 N.D. 775, 52 N.W.2d 107 (1952). Factors to consider under the Ruff-Fischer guidelines include:
the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.
Lindberg, at ¶ 28 (citations omitted). The needs of the spouse seeking support and the supporting spouse's needs and ability to pay must also be considered. Overland, at ¶ 16.
[¶ 8] There are two types of spousal support. While permanent spousal support is appropriate to provide traditional maintenance for a spouse who is incapable of rehabilitation, rehabilitative spousal support is awarded to provide a spouse time and resources to acquire an education, training, work skills, or experience that will enable the spouse to become self-supporting. van Oosting v. van Oosting, 521 N.W.2d 93, 100 (N.D.1994) (citation omitted). Rehabilitative spousal support is preferred, but permanent spousal support may be required to maintain a spouse who cannot be adequately retrained to independent economic status. Id.

A
[¶ 9] Ronald Parisien contends the district court did not properly consider his ability to pay spousal support. Spousal support awards must be made in consideration of the needs of the spouse seeking support and of the supporting spouse's needs and ability to pay. Overland, 2008 ND 6, ¶ 16, 744 N.W.2d 67.
[¶ 10] Ronald Parisien argues the district court's finding of the parties' income disparity is far greater than it is in reality. He is employed as a building construction technology instructor at Turtle Mountain Community College, a nine-month position for which he receives $52,225 per year. The district court also found he is regularly employed during the summer months and earned $11,125 at Turtle Mountain Community College during the summer of 2008, thus making his total gross income $63,350 for the year 2008. Ronald Parisien argues the district court adopted the highest possible figure based upon the testimony presented. At trial, he testified that grant funding at the university is based on whether certain objectives are met. He testified that each year, the university rehires him "pending funding." However, he also testified he has worked at the college since 1980 and funding has "pretty much been staying the same actually." He testified his current contract at the college was $52,225, plus the additional income of $11,125 for the summer of 2008. On appeal, he does not argue that the numbers were in error or that he does not typically work during the summer, but only that "the trial court adopted the highest possible income figure based upon the testimony presented."
[¶ 11] Additionally, he contends the district court adopted the lowest possible figure in determining Jill Parisien's gross income. He contends Jill Parisien has the capacity to work more than forty hours a week. At trial, Jill Parisien testified she makes $12 an hour and works forty hours per week. While she previously worked two jobs, she terminated the second job on medical advice. There is ample evidence to support the district court's finding that Ronald Parisien's total gross income is *134 $63,350 per year and Jill Parisien's total gross income is $24,000 per year. The district court's finding of the parties' income levels is not clear error. Ronald Parisien agreed at trial that his actual total gross income for 2008 was $63,350. His stated monthly expenses totaled $2,389.
[¶ 12] Citing Krueger v. Krueger, 2008 ND 90, ¶ 9, 748 N.W.2d 671 (citation omitted), Ronald Parisien argues the district court did not balance "the burdens created by the separation when it is impossible to maintain two households at the predivorce standard of living." Although a more explicit analysis would be desirable, we believe the district court sufficiently analyzed property distribution and spousal support under the Ruff-Fischer guidelines and considered Jill Parisien's needs and Ronald Parisien's needs and ability to pay spousal support.

B
[¶ 13] Ronald Parisien also contends the district court failed to consider the already lopsided property distribution before making an award of spousal support.
[¶ 14] At the time of trial, the district court found Jill Parisien had reached her maximum earning capacity at $24,000 a year, and to exceed that level she would need to further her education, which "at this stage of her life" would not "necessarily be rewarded." The district court also found Ronald Parisien's earning capacity was substantially greater at $63,000 a year with benefits. In its analysis of property division, the district court found little evidence of the necessities of the parties, other than that substantial repairs are necessary on the family home to render it habitable on a long-term basis. The court also found this factor weighed in favor of spousal support. While the thirty-three year marriage was long-terma factor which normally would result in an equal division of property and debtsthe district court found Ronald Parisien's misconduct and Jill Parisien's efforts to support the family during his incarceration had to be recognized. The district court found that while there was no suggestion of misconduct by Jill Parisien, Ronald Parisien had participated in a long-term affair and engaged in criminal activities, causing the end of the marriage and economic harm to Jill Parisien. The district court found Ronald Parisien is in good health (other than having high blood pressure), while Jill Parisien has diabetes, which is a matter of concern to her healthcare provider. The district court found the parties do not have any income-producing property and must live off their respective earnings. Finally, the district court said that if one removes the land Jill Parisien inherited from her family from the marital estate, Ronald Parisien would actually receive a greater net distribution. The district court said such a result did not seem fair given the equities of the marriage, but that an adjustment would be reflected in spousal support. Additionally, the district court recognized that the requirement that a party be proven a "disadvantaged spouse" as a prerequisite to an award of spousal support has been abrogated (see Sack v. Sack, 2006 ND 57, 711 N.W.2d 157). Nonetheless, it found Jill Parisien to be economically disadvantaged, given her limited job prospects and the contributions she made out of her retirement account to support the family during Ronald Parisien's incarceration. The district court found that during Ronald Parisien's incarceration, Jill Parisien withdrew more than $14,000 from her personal retirement account to pay bills and real estate taxes and to assist the parties' children.
*135 [¶ 15] Ronald Parisien argues the district court failed to properly consider the already lopsided marital property distribution before making the spousal support award. He does not challenge the property distribution itself, but instead contends that because Jill Parisien was already awarded nearly twice as much property, spousal support is not appropriate. Property division and spousal support are not to be considered separately or in a vacuum. Solem v. Solem, 2008 ND 211, ¶ 11, 757 N.W.2d 748. Property distribution need not be equal to be equitable, but a substantial disparity must be explained. Id. at ¶ 13.
[¶ 16] A greater property distribution does not necessarily eliminate the need for spousal support. See, e.g., Solem, 2008 ND 211, 757 N.W.2d 748. Here, Ronald Parisien contends Jill Parisien was awarded twice as much property, as well as medical insurance coverage. He also contends the district court based its property distribution and spousal support award primarily on his misconduct. He argues the spousal support award is thus clearly erroneous or, at the very least, grossly excessive. We conclude the award of spousal support here was neither clearly erroneous nor grossly excessive, considering it in conjunction with the distribution of property. See Bell v. Bell, 540 N.W.2d 602, 603 (N.D.1995) (dissipation of marital estate primarily by unlawful activity justified awarding all of the remaining estate to spouse). While the district court in its Ruff-Fischer analysis did weigh Ronald Parisien's misconduct against him, it also considered the remaining factors. The district court focused on Ronald Parisien's greater earning capacity; his marital, financial, and criminal misconduct; Jill Parisien's necessities to maintain her home; Jill Parisien's health; and the origin of the marital property. It explained that substantial repairs on the family home are necessary to render it habitable on a long-term basis. Thus, although Jill Parisien received a greater share of the property distribution, it was not clearly erroneous for the district court to award her spousal support as well.
[¶ 17] Ronald Parisien also contends that providing Jill Parisien health insurance could cost him $300-400 per month. He testified at trial, however, that as long as the district court ordered him to provide health insurance coverage for Jill Parisien, his health insurance company would not require him to pay any more than he did while they were married, but that without a court order, the cost of covering Jill Parisien would be $300-400 per month. The district court did order Ronald Parisien to continue to provide coverage.

III
[¶ 18] We affirm the district court's award of spousal support.
[¶ 19] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS and MARY MUEHLEN MARING, JJ., and GERALD H. RUSTAD, D.J., concur.
[¶ 20] The Honorable GERALD H. RUSTAD, District Judge, sitting in place of KAPSNER, J., disqualified.