2013 ND 116

**Helen REBEL, Plaintiff and Appellant**

v.

**Rodney Allen REBEL, Defendant and Appellee.**

No. 20120280.

Supreme Court of North Dakota.

July 18, 2013.

444

Thomas M. Jackson, Bismarck, ND, for plaintiff and appellant.

Dann E. Greenwood, Dickinson, ND, for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Helen Rebel appeals from a district court judgment granting her a divorce from Rodney Rebel, primary residential responsibility and child support for their then minor child, and distributing their marital property. We affirm the child support award, but we reverse and remand the property distribution. The district court has not adequately articulated reasons justifying its calculated $356,769.00 disparity in favor of Rodney

Rebel. Moreover, the value of the property received by Helen Rebel is less than the value articulated by the district court. Under the circumstances, we are unable to determine that the resulting property distribution is equitable.

I

[¶ 2]   Helen and Rodney Rebel married in 1989 and owned a farming and ranching operation in western North Dakota. Rodney Rebel has been engaged in farming and ranching his entire adult life. Helen Rebel worked on the farm as well, but in about 1993 she started working for various local businesses. The couple had two children, one of which was a minor at the time of the divorce. Rodney Rebel had leukemia during their marriage, but it was in remission at the time of trial. As a result of Rodney Rebel's health issues, he receives Social Security disability benefits for himself and the minor child.

[¶ 3]   In 1993 and 2009, the couple purchased approximately 1,200 acres of real property from Rodney Rebel's parents. The land had substantially been in the Rebel family for several generations. In the 1993 sale, Helen and Rodney Rebel purchased approximately 480 acres from his parents for $242 per acre. The contract included a twenty-five year option to purchase more land from Rodney Rebel's parents at the same rate of $242 per acre and allowed rents paid on the land to offset the purchase price. In 2009, Rodney Rebel's parents were financially struggling, and the couple exercised the option to purchase the land for $242 per acre, less rents paid. The court heard evidence the land was valued at over $900 per acre at the time of the divorce. Rodney Rebel acknowledged the transaction was "extremely favorable" and at a price "dramatically less than the fair market value." The transaction was complicated because a bank had a mortgage on the land that was recorded after Rodney and Helen Rebel's option contract. Ultimately, they purchased 720 acres from his parents with the payments going to the bank. Rodney Rebel's parents filed for bankruptcy.

[¶ 4]   In 2010, Helen Rebel filed for divorce, citing irreconcilable differences. She revealed to Rodney Rebel she was romantically involved with her boss. The couple separated. During this time, the minor child lived with Helen Rebel in the couple's home in Richardton, and Rodney Rebel moved into a mobile home on the couple's farmstead. Helen Rebel did not seek an interim child support order, but Rodney Rebel provided monetary support for the child.

[¶ 5]   At trial, Helen Rebel proposed that the court award her the property acquired in 1993, with Rodney Rebel receiving all the farm assets and the land purchased in 2009. To equalize the distribution, Helen Rebel sought a cash payment. In contrast, Rodney Rebel proposed to have the court award him all of the farmland, with Helen Rebel receiving the marital residence, certain financial assets, and a cash payment for a portion of the machinery, livestock, feed and farm supplies as necessary to equalize the distribution.

[¶ 6]   The district court granted the divorce. Based on the parties' stipulation, it awarded Helen Rebel primary residential responsibility of the child. The court awarded $238.00 in monthly child support to begin April 1, 2012. In distributing their property, the court found the net marital estate to be worth $1,609,110.84, making one-half worth $804,555.42. The district court awarded Rodney Rebel the farmland, subject to a mortgage; farm machinery, livestock, feed, and grain; and other various assets and debts equaling a total net value of $1,018,816.53. Helen

Rebel received the marital home, subject to a mortgage; cash payments equal to the net value of the farm machinery, livestock, feed, and grain, valued at $512,534.78; and other assets and debts equaling a total net value of $662,047.52. The district court ordered Rodney Rebel to pay Helen Rebel twenty percent of the net value of farm machinery, livestock, feed, and grain, within ninety days and the remainder within three years. The distribution resulted in a difference of "$356,769.00," by the district court's calculation.

## II

[¶ 7] Under N.D.C.C. § 14–05–24(1), a district court must make an equitable division of the parties' marital estate in a divorce action. "In making an equitable distribution of marital property, a court must consider all of the parties' assets." *Kosobud v. Kosobud*, 2012 ND 122, ¶ 6, 817 N.W.2d 384 (quotation omitted). After including all of the parties' marital assets and debts in the marital estate, the court must consider the following factors emanating from *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952), and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966), in its asset distribution:

[T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material. The trial court is not required to make specific findings, but it must specify a rationale for its determination.

*Kosobud*, at ¶ 6 (quotation omitted). Though a property division need not be equal to be equitable, the district court must explain a substantial disparity. *Id.*

[¶ 8] "We have upheld the distribution of farm assets to one spouse with an offsetting monetary award to the other spouse." *Gibbon v. Gibbon*, 1997 ND 210, ¶ 7, 569 N.W.2d 707 (citation omitted). But, "[w]e have consistently held that periodic cash payments without interest awarded as part of a property distribution must be discounted to present value in determining whether or not the distribution is equitable." *Welder v. Welder*, 520 N.W.2d 813, 816 (N.D.1994) (quotation and citations omitted); *see also Horner v. Horner*, 2004 ND 165, ¶ 18, 686 N.W.2d 131; *Steckler v. Steckler*, 519 N.W.2d 23, 25 (N.D.1994); *Sateren v. Sateren*, 488 N.W.2d 631, 633 (N.D.1992); *Lucy v. Lucy*, 456 N.W.2d 539, 542 (N.D.1990); *Pankow v. Pankow*, 371 N.W.2d 153, 157–58 (N.D.1985). As we said in *Welder*:

The reason for the rule is obvious: if the payments are not discounted to present value, the court is relying upon an artificial value when it distributes the property. When one party receives property which is clearly worth less than the value ascribed to it by the trial court, a reviewing court cannot determine whether the resulting property distribution is equitable. Therefore, it is necessary to discount periodic payments to present value.

*Welder*, at 816 (quotation omitted).

[¶ 9] A district court's property distribution is treated as a finding of fact, and this Court will not reverse the distribution unless the district court's findings are clearly erroneous. *Kosobud*, 2012 ND 122, ¶ 6, 817 N.W.2d 384. However, "[a] trial court's choice between two permissible views of the weight of the evidence is not clearly erroneous," and this Court will

not reverse simply because it may have viewed the evidence differently. *Id.* (quotation omitted). On appeal, this Court does not reweigh conflicts in the evidence, and it gives "due regard to the trial court's opportunity to judge the credibility of the witnesses." *Id.* (quotation omitted).

## A

■ [¶ 10] On appeal, Helen Rebel argues the district court "fail[ed] to equitably distribute the assets of the parties." Additionally, Helen Rebel argues she is entitled to interest on Rodney Rebel's ordered payments of $512,534.78 for the net value of the farm machinery, livestock, feed, and grain.

[¶ 11] The district court made findings using the *Ruff–Fischer* factors and divided the marital estate. The court found Rodney Rebel is in his mid-forties, has "problematic" health problems, and is limited to earning a living as a farmer and rancher due to his health. The court found Helen Rebel is in her mid-forties, has health problems that are less significant than Rodney Rebel's, and is successful in her work. The court found Helen Rebel earned approximately $42,000 per year, but Rodney Rebel's income is more difficult to quantify because it is offset by depreciation. The court noted the parties dispute the cause of the marriage's demise, but it found Helen Rebel was more at fault. The court also noted the circumstances surrounding the 2009 land purchase from Rodney Rebel's parents are disputed, but it found the transaction "does no credit to either Rodney nor Helen." The court further found the marriage was a lengthy marriage, the "circumstances and necessities of each [spouse] are equal," both parties entered marriage without any substantial property, and their joint contributions contributed to the increase in their marital estate.

[¶ 12] The court noted its difficulty in dividing up the land because the land appraisal did not attribute values to each particular parcel; rather, the land was valued as an entire unit. If it liquidated the assets, evidence was presented that "there would be substantial federal and state tax consequences," but the court found the amount would be "too speculative for the Court to consider."

[¶ 13] The district court awarded Rodney Rebel assets valued at $1,018,816.53, which, with the exception of some equally divided mineral acres and an apparently depleted sand and gravel interest, included all of the income producing assets. The court awarded Helen Rebel assets valued at $662,047.52. In explaining the $356,769.00 difference, the court noted the land obtained from Rodney Rebel's parents was "secured … on very generous terms," Rodney Rebel's livelihood is tied to farming, the land has been connected to the Rebel family for some time, and the looming bankruptcy issue may reduce the value of the estate by several hundred thousand dollars. The court concluded its analysis by stating:

> The Court has considered the guidelines for marital distribution. Most factors are even. Rodney's health and Helen's "fault" have been taken into consideration. By the Court's calculations, there is a difference of $356,768 in the value of the property distributed. If the Bankruptcy Court finds that the 2009 land transfer was for substantially less than value, Rodney's share will drastically decrease. That risk, in conjunction with what [has] been stated about the Ruff–Fischer guidelines, justifies the disparity.

The district court found the net marital estate to be worth $1,609,110.84, making one-half worth $804,555.42. The court awarded Rodney Rebel assets valued at

$1,018,816.53, and it awarded Helen Rebel assets valued at $662,047.52.[1] Helen Rebel is to receive cash payments from Rodney Rebel for $512,534.78 of the $662,047.52 award. The judgment requires Rodney Rebel to pay twenty percent, $102,506.96, within ninety days of judgment, and the remaining eighty percent, $410,027.82, within three years, but it failed to either include interest on Helen Rebel's delayed cash payments or calculate the present value of the payments.

[¶ 14] The district court articulated some reasons for granting an unequal distribution. But, the fact that the land was acquired on "very generous terms" from Rodney Rebel's parents does not explain giving the greater distribution to Rodney Rebel when the land was acquired during the marriage, both parties were purchasers, and the district court found "[b]oth parties' income and effort contributed to the increase in the marital estate." *See Ulsaker v. White*, 2006 ND 133, ¶ 12, 717 N.W.2d 567 ("[T]he origin of property is not the sole or, necessarily, the controlling factor under the *Ruff–Fischer* guidelines.") (citation omitted). The distribution was based on an assumption that the difference was $356,769.00. The district court has not adequately articulated reasons justifying a greater disparity in favor of Rodney Rebel. Moreover, by failing to either award interest or to compute the present value of the delayed payments, the actual disparity is greater than the $356,769.00 identified by the district court.

[¶ 15] Because the district court has not adequately articulated reasons justifying its calculated $356,769.00 disparity in favor of Rodney Rebel, and Helen Rebel

"receive[d] property which is clearly worth less than the value ascribed to it by the trial court, [we] cannot determine whether the resulting property distribution is equitable." *Welder*, 520 N.W.2d at 816; *see also Steckler*, 519 N.W.2d at 25; *Sateren*, 488 N.W.2d at 633; *Lucy*, 456 N.W.2d at 542. We remand the case to the district court to reconsider the property distribution.

B

■ [¶ 16] Helen Rebel argues the district court improperly allocated the mortgage on the parties' home to her because it is secured by the farm real estate. As a result, she argues, she "should not be responsible for any payments for the home."

■ [¶ 17] A district court's division of property is a finding of fact that will not be overturned unless it is clearly erroneous. *Keita v. Keita*, 2012 ND 234, ¶ 23, 823 N.W.2d 726 (citation omitted). "[F]indings of fact are presumptively correct." *Hunt v. Hunt*, 2010 ND 231, ¶ 8, 791 N.W.2d 164 (citation omitted). "The complaining party bears the burden of demonstrating on appeal that a finding of fact is clearly erroneous." *Dronen v. Dronen*, 2009 ND 70, ¶ 7, 764 N.W.2d 675 (quotation omitted). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or, although there is some evidence to support it, on the entire record, we are left with a definite and firm conviction a mistake has been made." *Hammeren v. Hammeren*, 2012 ND 225, ¶ 7, 823 N.W.2d 482 (citations omitted).

---

1. Though not raised by either party, we are unable to understand the court's net value calculation. The court found that the total net estate is valued at $1,609,110.84, yet adding the court's calculated net distribution to Rodney Rebel of $1,018,816.53 and Helen Rebel's calculated distribution of $662,047.52 results in a net marital estate of $1,680,864.05, not $1,609,110.84.

[¶ 18]   Helen Rebel offers no caselaw or authority for her assertion the district court erred.   Moreover, at trial Helen Rebel proposed to pay the debt on the house if she received certain parcels of land.   The debt was an ascertainable amount, allowing the district court to accurately calculate the remaining financial obligation.   We conclude she has not met her burden of showing the district court erred.   However, because we are remanding the issue of property distribution, the district court may reconsider this award on remand.

### C

[¶ 19]   Helen Rebel argues the district court erred by not awarding her retroactive child support.   The district court judgment requires Rodney Rebel to pay $238.00 in monthly child support commencing April 1, 2012.   Helen Rebel argues she is entitled to child support retroactive to when the case was filed, and therefore, Rodney Rebel owes her $4,522.00.   Rodney argues he supported the child by giving her cash, paying for her clothes, and providing other various items; additionally, he argues, Helen Rebel did not seek an interim order from the court for child support.

[¶ 20]   A district court's decision whether to award past child support is discretionary and will not be overturned unless the court abuses its discretion. *Hammeren,* 2012 ND 225, ¶ 30, 823 N.W.2d 482 (citations omitted).   A "court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law." *Id.* (citations omitted).   "When ... the district court provides no indication of the evidentiary and theoretical basis for its decision and the basis is not otherwise ascertainable in the record, we are left to speculate whether factors were properly considered and the law was properly applied, leaving us unable to perform our appellate function." *Deyle v. Deyle,* 2012 ND 248, ¶ 20, 825 N.W.2d 245 (quotation omitted).

[¶ 21]   In *Hammeren,* this Court recently affirmed a district court's decision to make payments retroactive to the commencement of the action, noting the district court did not hear any testimony when to start child support and an interim order had not been established. *Hammeren,* 2012 ND 225, ¶ 34, 823 N.W.2d 482.   The trial court offset the father's child support obligation by the approximately $300.00 per month he had been paying for child support, and this Court held the district court did not abuse its discretion. *Id.* at ¶¶ 34, 35.

[¶ 22]   Here, the district court did not indicate why it did not award retroactive child support; however, the basis for the court's decision is ascertainable in the record.   Helen Rebel requested retroactive child support, and Rodney Rebel requested prospective child support.   In support of his position, Rodney Rebel submitted an affidavit documenting various expenses he paid on the child's behalf since the divorce was filed.   Rodney Rebel's affidavit, trial testimony, and Helen Rebel's trial testimony all show Rodney Rebel wrote checks to the child for $300.00 to $400.00 each month, for a total of approximately $6,000.00.   Helen Rebel testified that she initially did not have a problem with Rodney Rebel paying the child directly, but she later became concerned the child was spending too much on expensive clothes.   Her concern eventually diminished.

[¶ 23]   We realize that payments to a child and payments for a child are different things, as evidenced by Helen Rebel's concerns about her daughter buying ex-

pensive clothing. But here, Rodney Rebel's affidavit also documented approximately $9,000.00 in additional expenses he paid during this time for the child. These expenses include, for example, expenses related to the child's car; school registration; school clothing; eye glasses; dental expenses; prom and homecoming dresses; basketball shoes; Helen Rebels's home insurance; a family cell phone plan until Helen Rebel removed Rodney Rebel from the plan; and health insurance for the child for part of this time. Like *Hammeren*, 2012 ND 225, ¶ 34, 823 N.W.2d 482, where the district court gave the father credit for his previous contributions, we conclude by way of inference the district court here did the same thing. Because record evidence shows Rodney Rebel's contributions exceeded the $4,522.00 Helen Rebel sought in retroactive child support, we conclude the district court did not abuse its discretion in not awarding retroactive child support.

### III

[¶ 24] We affirm the child support award, but we reverse and remand the property distribution.

[¶ 25]    DANIEL J. CROTHERS, concurs.

GERALD W. VANDE WALLE, C.J., concurs in the result.

MARING, Justice, concurring.

[¶ 26] I agree with the result and part II.C of the majority opinion. However, I write again separately to express my opinion on the issue of non-economic fault in the context of equitable property distribution. I join others who are of the opinion that non-economic fault should not be considered in the equitable division of marital property. I am, also, of the opinion the trial court's findings of fact under the

*Ruff–Fischer* guidelines do not support an unequal distribution of the marital estate.

### I

[¶ 27] Under N.D.C.C. § 14–05–24, the trial court "shall make an equitable distribution of the property and debts of the parties." In 1952 and 1966, this Court held the trial court should consider a number of factors in determining what is an equitable distribution of property. *See Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966). Among the enumerated *Ruff–Fischer* factors, the trial court may consider the "conduct of the parties during the marriage." Therefore, the provision that non-economic fault in the breakup of the marriage is a consideration in property distribution is a judicially-created rule and not statutory. The *Ruff–Fischer* guidelines are based on a rule enunciated in two Nebraska Supreme Court decisions; namely, *Holmes v. Holmes*, 152 Neb. 556, 41 N.W.2d 919 (1950) and *Ristow v. Ristow*, 152 Neb. 615, 41 N.W.2d 924 (1950). *Ruff*, at 111. It is interesting to note that the criteria for the division of property in Nebraska are now statutory and do not include the "conduct of the parties during the marriage." Neb.Rev.Stat. § 42–365; *see Campbell v. Campbell*, 202 Neb. 575, 276 N.W.2d 220, 224 (1979).

[¶ 28] At the time the *Ruff–Fischer* factors were announced, the grounds for divorce were: adultery, extreme cruelty, willful desertion, willful neglect, habitual intemperance, conviction of felony, or insanity. *See* N.D.R.C. § 14–0503 (1943) and N.D.C.C. § 14–05–03 (Supp.1965). In 1971, following this Court's adoption of the *Ruff–Fischer* guidelines, the Legislative Assembly adopted "irreconcilable differences" as a ground for divorce. *See* 1971 N.D. Sess. Laws ch. 149, § 1. Modeled after the California Family Code and

adopting language from the Uniform Marriage and Divorce Act, the purpose of the amendment was to provide a basis to grant a couple's divorce without proof of blame. *See Hearing on H.B. 1097 Before the House Judiciary Comm.*, 42nd N.D. Legis. Sess. (Jan. 26, 1971) (testimony of Peter S. Hilleboe, Rep., and the Honorable Adam Gefreh, District Court Judge) [hereinafter *"Hearing on H.B. 1097"*]. Supporters of the amendment asserted it would "eliminate[ ] the manufactured excuse and [would] protect the children from thinking one of the parents [was] to blame...." *Hearing on H.B. 1097* (committee discussion). The committee also heard a proposal to amend N.D.C.C. § 14–05–24, division of property and debts, to award equitable distribution of property "without regard to marital misconduct." *Hearing on H.B. 1097* (testimony of Judge Gefreh). It appears from the Journal notes that the committee did not adopt this proposal. *See id.* (proposed amendment attached to Judge Gefreh's testimony); Journal of the House, 42nd N.D. Legis. Sess., 471 (Feb. 3, 1971) (committee recommendations made to the House did not include the proposed amendment). The Legislative Assembly did not eliminate any of the existing causes for divorce, but merely added irreconcilable differences as an additional cause. 1971 N.D. Sess. Laws ch. 149, § 1.

[¶ 29] Following the adoption of irreconcilable differences, this Court adhered to the *Ruff–Fischer* guidelines, holding marital misconduct was a factor to be considered in the equitable distribution of the parties' property. *Novlesky v. Novlesky*, 206 N.W.2d 865, 868 (N.D.1973). The Court relied on the fact that the 1971 legislature did not revise the causes for divorce, but only added the additional cause, irreconcilable differences. *Id.* In *Novlesky*, Justice Teigen concurred in the result, stating "[t]he 1971 amendment to the divorce statute has created a no-fault cause for divorce.... Thus where a divorce is sought on the ground of irreconcilable differences, the fault standard required to be established under the remaining seven grounds for divorce is not a factor." *Id.* at 870 (Teigen, J., concurring specially).

[¶ 30] I am of the opinion that it is time we discard the trial court's consideration of non-economic fault in distributing marital property when granting a divorce on any ground. This judicially-created rule that "conduct of the parties during the marriage" is a factor to be considered was adopted prior to the adoption of irreconcilable differences. The purpose behind granting a divorce based on irreconcilable differences was to avoid shifting blame on one spouse, creating a potentially damaging situation for the children involved. *See Hearing on H.B. 1097.* Allowing non-economic fault, especially extramarital affairs, to play a role in property distribution does not further this purpose, but rather, undermines it. Therefore, I believe non-economic fault should not be a consideration in the equitable distribution of property especially when divorces are premised on irreconcilable differences, which are the majority of cases today.

[¶ 31] In the years following *Novlesky*, Justices Teigen, Vogel, and Levine wrote separately advocating for the abolishment of non-economic fault as a factor in property distribution. *See Erickson v. Erickson*, 384 N.W.2d 659, 662 (N.D.1986) (Levine, J., concurring specially and Meschke, J., joining); *Nastrom v. Nastrom*, 262 N.W.2d 487, 494 (N.D.1978) (Vogel, J., concurring in part and dissenting in part); *Haugeberg v. Haugeberg*, 258 N.W.2d 657, 667 (N.D.1977) (Vogel, J., dissenting); *Hultberg v. Hultberg*, 259 N.W.2d 41, 46–47 (N.D.1977) (Vogel, J., concurring in part and dissenting in part). In *Erickson*, Justice Levine opined: "Fault is an appropri-

ate consideration only insofar as it can be shown to have substantially affected the economic status of the parties. Marital misconduct which is not significantly related to the economic condition of the marriage is not germane to a division of property and should not be considered." 384 N.W.2d at 662 (Levine, J., concurring specially and Meschke, J., joining).

[¶ 32] This position is consistent with the Uniform Marriage and Divorce Act. The Uniform Act "provides unambiguously ... allocation of marital property ... be made 'without regard to marital misconduct.' " American Law Institute, *Principles of the Law of Family Dissolution: Analysis and Recommendations,* at 46 (2002). A majority of jurisdictions have adopted the Uniform Act's position and do not consider fault as a factor in deciding property distribution. *See id.* at 50, 73–89 (listing the collection of states and supporting authority and noting a systematic examination of authorities conducted in 1996 concluded "[o]n the allocation of property at least [thirty-two] states have a pure no-fault system").[2]

[¶ 33] The conduct of the parties during the course of the marriage should only be considered when it "substantially affect[s] the economic status of the parties." *See Erickson,* 384 N.W.2d at 662 (Levine, J., concurring specially and Meschke, J., joining). I would, therefore, allow consideration of conduct involving domestic violence or other forms of significant physical, emotional, or mental abuse that cause economic loss or expense to the marital estate in addition to marital affairs that dissipate the marital estate.

[¶ 34] Further, eliminating consideration of non-economic fault would allow for an even-handed approach to determining an equitable distribution and minimize the potential for inconsistent and disparate treatment and application of non-economic fault among trial courts. Currently, a trial court is left to its own discretion when applying the guidelines, resulting in one court considering an extra-marital affair or moral misconduct significant and another court considering it only if it causes the dissolution of the marriage and, yet another, considering it not significant at all. *See van Oosting v. van Oosting,* 521 N.W.2d 93, 96 (N.D.1994). Concerning this inconsistency, I agree with Justice Vogel:

> For this state of affairs I assign no blame. Some of the reasons may be historical. Trial courts have tried to follow our direction, and we have tried to give their rulings the respect due them under Rule 52(a), N.D.R.Civ.P. Regardless of the causes, the results are not felicitous.

*Haugeberg,* 258 N.W.2d at 668 (Vogel, J., dissenting) (discussing the inconsistencies in property distribution awards based on fault of a spouse); *see also Wilhelm v. Wilhelm,* 1998 ND 140, ¶ 31, 582 N.W.2d 6 (Maring, J., concurring and Meschke, J., joining) (pointing out the trial court, in dismissing the wife's argument that her husband's affair should be considered, stated " '[s]uch are the days of our lives' ").

[¶ 35] It is my opinion this Court should adopt the Uniform Act's position and join the majority of states that limit the consideration of fault as a factor in property distribution only to economic fault.

## II

[¶ 36] I, also, am of the opinion that the trial court's findings of fact do not

---

**2.** Although a systematic examination of authorities has not been conducted since 1996, most of the states decided whether to apply the no-fault principles to property division at the time they adopted no-fault divorce in the 1970s and 1980s. *See Principles of the Law of Family Dissolution: Analysis and Recommendations,* at 51.

support the conclusion that an unequal property distribution in favor of Rodney Rebel is equitable.

[¶ 37] Helen Rebel argues the trial court failed to equitably distribute the assets of the parties. The majority opinion, at ¶ 15, addresses this issue concluding that "[b]ecause the district court has not adequately articulated reasons justifying its calculated $356,769.00 disparity in favor of Rodney Rebel, and Helen Rebel received property which is clearly worth less than the value ascribed to it by the trial court, we cannot determine whether the resulting property distribution is equitable." (Quotation omitted.) The majority rightly remands the case to the trial court to reconsider the property distribution.

[¶ 38] As noted, in distributing marital property, the trial court must apply the *Ruff–Fischer* guidelines. *Peterson v. Peterson*, 1999 ND 191, ¶ 7, 600 N.W.2d 851. The *Ruff–Fischer* guidelines provide:

> The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Peterson*, at ¶ 7.

[¶ 39] Here, the trial court found "[t]he efforts of both have resulted in a substantial marital estate." Additionally, the trial court found that "for several years after the parties married Helen did work at the farm" and, after she gained employment off the farm, "substantially all of her income was used for family purposes and she has provided the health insurance for the family through Schmidt Repair." The tri-al court also found the "farm has a history as a successful farm with more than sufficient cash flow to service the debt against it . . . and allow for reinvestment back into the farm, which has resulted in an increasing value thereof."

[¶ 40] "When a spouse's contributions to the family enable the other spouse to devote full time and attention to a business, contributing to the accumulation, appreciation, and preservation of assets, the spouse's contributions deserve equivalent recognition in a property distribution." *Peterson*, 1999 ND 191, ¶ 9, 600 N.W.2d 851. Here, the record indicates that not only did Helen Rebel contribute to the farm as a homemaker, but the trial court found she acquired employment off the farm and contributed "substantially all of her income was used for family purposes." Helen Rebel's financial contributions allowed for reinvestment back into the farm, which resulted in its increased value. Her contributions to the marriage and the marital estate allowed Rodney Rebel to focus on farming and to retiring the debt against it. It was her employment that provided him with health insurance after he was diagnosed with leukemia. The financial contributions of both parties to the marital estate favor an equal division of the marital estate.

[¶ 41] The trial court also found other factors favoring an equal division of the marital estate: (1) the marriage was considered a long-term marriage; (2) the circumstances and necessities of each were equal, and (3) neither party owned any substantial property at marriage. However, the trial court awarded an unequal division of the marital estate, stating:

> If unequal, a smaller share to Helen could still be equitable because:
>
> 1. Her infidelity precipitated the action.

2. All the real estate has been in the Rebel family for generations.

3. In 2009, they purchased a significant portion of the real estate on extremely favorable terms from his parents.

4. An equal split would require liquidation of the assets compromising the farm.

5. This would leave Rodney to lose the only occupation for which he is qualified.

The trial court's conclusion wholly abandons the *Ruff–Fischer* guidelines. The trial court disregarded its findings with regard to the duration of the marriage; the circumstances and necessities of each party; and the financial contributions to the property owned, its value, its income-producing capacity, and when it was accumulated. Instead, it gave undue weight to the familial history and potential disposition of the farm. This Court has held that "preserving the family farm is not to be done at all costs nor should it engulf all other factors" and when preservation appears to increase rather than decrease the potential economic harm, liquidation is appropriate. *See Marschner v. Marschner,* 2001 ND 4, ¶¶ 18, 20, 621 N.W.2d 339. Here, the trial court disregarded the holding in *Marschner* and awarded inequitable distribution of the marital estate based on the sole fact that the source of the property was Rodney Rebel's family and the farm must be preserved. The trial court simply ignored that Helen Rebel substantially contributed to the purchase and appreciation of the farm. I am of the opinion the trial court's findings do not support a disparity in property distribution. Therefore, I believe on remand the trial court must consider Helen Rebel's financial contributions to the acquisition and maintenance of the farm property.

III

[¶ 42] I would reverse and remand for a determination of property distribution without regard to non-economic fault and under the correct application of our law.

[¶ 43] Mary Muehlen Maring

SANDSTROM, Justice, concurring and dissenting.

[¶ 44] Concluding the district court adequately explains the Rebels' property distribution, I respectfully dissent from that portion of the majority opinion.

[¶ 45] The majority concludes the district court did not adequately justify the disparity in its property division. It states the court "articulated *some* reasons for granting an unequal distribution" but addresses only the district court's finding that the farmland was acquired on "very generous terms" from Rodney's parents. In stating the "distribution was based on an assumption that the difference was $356,769.00," the majority limits the court's analysis only to its finding that the land was purchased under favorable terms. The district court, however, made numerous other findings not addressed by the majority.

[¶ 46] The court found Rodney's health is more problematic than Helen's. Rodney is recovering from leukemia and suffers from joint degeneration. He receives Social Security disability benefits. The court found Helen is successful in her work, but found, however, Rodney is basically qualified only to be a farmer or rancher. It found Rodney's health problems allow him to farm because he can control his schedule, which would be unlikely should he have to work outside the farm. Helen has no knowledge of or interest in farming, and if she were awarded livestock or machinery, the assets would be sold. The court found there would be substantial fed-

 

eral and state tax consequences if the farm property were liquidated.

[¶ 47] The court found the "fault factor" weighs in favor of Rodney because Helen's extramarital relationship was established years before she told Rodney. The court found the 2009 farmland acquisition occurred when Helen was "at the very least emotionally estranged from Rodney."

[¶ 48] Further, the court summarized,

If unequal, a smaller share to Helen could still be equitable because:

1. Her infidelity precipitated the action.

2. All the real estate has been in the Rebel family for generations.

3. In 2009, they purchased a significant portion of the real estate on extremely ·favorable terms from his parents.

4. An equal split would require liquidation of the assets compromising the farm.

5. This would lead Rodney to lose the only occupation for which he is qualified.

[¶ 49] In addition, the court concluded, "If the Bankruptcy Court finds that the 2009 land transfer was for substantially less than value, Rodney's share will drastically decrease. That risk, in conjunction with what [h]as been stated about the Ruff–Fis[c]her guidelines, justifies the disparity."

[¶ 50] Indeed, "[p]roperty distribution need not be equal to be equitable, but a substantial disparity must be explained." *Parisien v. Parisien,* 2010 ND 35, ¶ 15, 779 N.W.2d 130. I believe the district court's findings adequately explain the property division.

[¶ 51] I would affirm the judgment.

[¶ 52] Dale V. Sandstrom