2016 ND 14

**Todd A. WANTTAJA, Plaintiff
and Appellee**

v.

**Caroline L. WANTTAJA, Defendant
and Appellant.**

No. 20140436.

Supreme Court of North Dakota.

Jan. 14, 2016.

Elizabeth A. Ebert, Dickinson, N.D., for plaintiff and appellee.

Craig M. Richie, Fargo, N.D., for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Caroline Wanttaja appeals from a divorce judgment and from an order denying her motion to correct a clerical error or for a new trial. We conclude the district court did not abuse its discretion in denying her motion to correct a clerical error or for a new trial to address the parties' medical bills. We conclude, however, the court erred as a matter of law in failing to address child support in the divorce proceedings and abused its discretion in denying her request for attorney fees. We affirm in part, reverse in part, and remand for further proceedings.

## I·

[¶ 2] Todd Wanttaja and Caroline Wanttaja were married in 2008 in Fargo and have one child together, born in 2003. The parties separated sometime in mid–2012. In June 2012, Caroline Wanttaja applied for and received public assistance, assigning medical support rights to the State. In November 2012, the State, through the Fargo Regional Child Support Unit, brought an action in Cass County on behalf of Caroline Wanttaja against Todd Wanttaja, seeking child support for the minor child.

[¶ 3] In January 2013, Todd Wanttaja commenced this action for divorce in Dunn County. Before the divorce action, Todd Wanttaja had moved to Killdeer, North Dakota, and Caroline Wanttaja relocated with their child to Savage, Minnesota. While the divorce action in Dunn County was pending, the parties entered into a stipulation for judgment in the Cass County child support action in March 2013, and the Cass County district court entered a judgment in April 2013 requiring Todd Wanttaja to pay Caroline Wanttaja child support.

[¶ 4] In October 2013, the district court in Dunn County held a trial in the divorce action. In January 2014, the court issued a decision addressing the parties' property and debt distribution, awarding Caroline Wanttaja spousal support, denying her request for attorney fees, and granting Todd Wanttaja parenting time with their child. Although the parties did not dispute an award of primary residential responsibility to Caroline Wanttaja, the Dunn County district court held it was without jurisdiction to modify the April 2013 child support award entered in the Cass County district court. Todd Wanttaja moved the Dunn County district court for clarification, asserting the court had not addressed the majority of the parties' marital debts and requesting the court identify how the marital debt should be divided.

[¶ 5] The district court clarified the marital property and debt distribution, allocating the marital debt equally between the parties, and issued an order for judgment in March 2014. Before entry of judgment, however, Caroline Wanttaja objected to the court's findings and conclusions, including the amount of the parties' medical debts, the denial of attorney fees, and the failure to award child support. She also offered evidence regarding various medical bills. In May 2014, the court overruled her objections and issued revised findings of fact, conclusions of law, and an order for judgment. Caroline Wanttaja moved for reconsideration, again raising issues regarding the parties' medical debt, child support jurisdiction, and attorney fees. The court denied her motion for reconsideration.

[¶ 6] After judgment was entered, Caroline Wanttaja moved for a new trial on the same issues. The court denied her new trial motion.

## II

[¶ 7] Caroline Wanttaja argues the district court erred in failing to grant her post-trial motions to correct a clerical error or other errors regarding the amount of the parties' medical bills. She also argues the court erred in failing to grant her a new trial because the court mistakenly believed the parties had stipulated to the amount of their medical bills.

[¶ 8] Section 14–05–24(1), N.D.C.C., requires the district court to make an equitable distribution of the parties' property and debts. "After including all of the marital assets and debts, the district court must apply the *Ruff–Fischer* guidelines to divide the property." *Eberle v. Eberle*, 2010 ND 107, ¶ 19, 783 N.W.2d

254; *see also Fischer v. Fischer,* 139 N.W.2d 845, 852–53 (N.D.1966); *Ruff v. Ruff,* 78 N.D. 775, 784, 52 N.W.2d 107, 111 (1952). "Once all property and debts of the parties are included, a trial court may consider which of the parties has incurred particular debts, and the purposes for which those debts were incurred, in determining an equitable allocation of the responsibility for repayment." *Schiff v. Schiff,* 2013 ND 142, ¶ 14, 835 N.W.2d 810 (quoting *Neidviecky v. Neidviecky,* 2003 ND 29, ¶ 11, 657 N.W.2d 255).

▆▆▆ [¶ 9] The district court's distribution of debts presents a finding of fact that will not be overturned unless clearly erroneous. *See Mertz v. Mertz,* 2015 ND 13, ¶ 25, 858 N.W.2d 292. "[F]indings of fact are presumptively correct." *Hunt v. Hunt,* 2010 ND 231, ¶ 8, 791 N.W.2d 164. The party challenging a court's finding of fact on appeal has the burden of showing that a finding is clearly erroneous. *Rebel v. Rebel,* 2013 ND 116, ¶ 17, 833 N.W.2d 442. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or, although there is some evidence to support it, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Id.*

[¶ 10] Caroline Wanttaja has not raised an issue on appeal regarding the district court's analysis under the *Ruff–Fischer* guidelines in distributing the parties' property and debts. Rather, she contends the court erred in denying her new trial motion on grounds of a clerical error or other error regarding the amount of the parties' medical bills or in finding the parties' had stipulated to medical debt in the amount of $3,000.

▆▆▆ [¶ 11] Under N.D.R.Civ.P. 60(a), a district court may correct "a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judg-

ment, order, or other part of the record." *See Kukla v. Kukla,* 2013 ND 192, ¶ 11, 838 N.W.2d 434. Thus, "[a] court may correct, [under] Rule 60(a), errors created by oversight or omission that cause the judgment to fail to reflect what was intended at time of trial." *Kukla,* at ¶ 11 (quoting *Gruebele v. Gruebele,* 338 N.W.2d 805, 811 (N.D.1983)). Additionally, in *Travelers Cas. Ins. Co. v. Williams Co. Constr.,* 2014 ND 160, ¶ 22, 851 N.W.2d 164 (quoting *Gisvold v. Windbreak, Inc.,* 2007 ND 54, ¶ 5, 730 N.W.2d 597 (citations omitted)), this Court addressed a new trial motion based on insufficient evidence, stating:

A motion for a new trial under N.D.R.Civ.P. 59(b)(6) based on a claim of insufficient evidence is addressed to the sound discretion of the district court. A district court's discretionary authority to decide a motion for a new trial is different from this Court's authority on review, which is limited to whether the district court abused its discretion. A district court abuses its discretion when it acts in an arbitrary, unconscionable, or unreasonable manner, when its decision is not the product of a rational mental process by which the facts of record and law relied upon are stated and considered together for the purpose of achieving a reasonable determination, or when it misinterprets or misapplies the law.

▆▆▆ [¶ 12] Here, the district court judgment held Todd Wanttaja responsible for $1,500 in medical expenses, which the court found was one-half of Caroline Wanttaja's medical bills incurred during the marriage. Caroline Wanttaja argues the district court mistakenly believed the parties had stipulated to $3,000 as the amount of medical bills. She also contends on appeal that the district court made a "clerical" or "other" error when the court stat-

ed her medical bills were $3,000, because her medical bills actually totaled $21,518.10. She also submitted additional evidence with her various post-trial motions to support a higher amount.

[¶ 13] Although she concedes on appeal that some of her claimed medical bills are for her other children, Caroline Wanttaja asserts the total amount of medical debt incurred during the marriage for her and for their child is $14,763.05. Todd Wanttaja responds, however, that since the amount of medical expenses was in dispute, he agreed to stipulate at trial that only $3,000 of alleged medical bills had been incurred during the marriage. He further contends no evidence offered or received at trial supports the amount claimed by Caroline Wanttaja.

[¶ 14] In denying Caroline Wanttaja's new trial motion, the district court specifically explained it had not mistakenly ordered $3,000 in medical bills, but rather Caroline Wanttaja had not presented "sufficient evidence" at trial to find more than the $3,000 in medical debt agreed upon by Todd Wanttaja. The court refused to allow Caroline Wanttaja to submit additional evidence after trial as part of her post-trial motions to support a higher amount of medical bills incurred during the marriage. Based on its explanation, we are able to understand the basis of the court's decision to deny Caroline Wanttaja's post-trial motions.

[¶ 15] At trial, the district court received a property and debt listing under N.D.R.Ct. 8.3 into evidence. That document, which Todd Wanttaja signed, listed a debt of $23,613.35 to a collection agency but acknowledged only $3,000 marital debt as "medical." During trial, Caroline Wanttaja testified the total medical bills incurred during the marriage was $23,613.35—the amount being sought by the collection agency. She testified the medi-

cal bills had been incurred during the marriage because she had been "on medical assistance [before the marriage] so they covered any thing [sic]." The court also received an exhibit that Caroline Wanttaja offered into evidence, showing the collection agency's open accounts totaling $23,613.35 for various charges to Sanford medical group and hospital. Although Todd Wanttaja objected to the exhibit's admission because the document did not show the dates of the charges and did not establish the charges were incurred during the marriage, the court overruled his objection, stating that it went to the weight of the evidence.

[¶ 16] While the collection agency statement received into evidence establishes unpaid medical bills, the statement does not indicate the dates of the charges or whether the charges were incurred during the marriage. In the N.D.R.Ct. 8.3 property and debt listing, Todd Wanttaja valued the parties' medical debt incurred during the marriage at $3,000. Although Caroline Wanttaja argues the parties did not stipulate to $3,000 in medical bills incurred during the marriage, the district court concluded she had failed at trial to prove a higher amount had been incurred during the marriage. The court instead relied on Todd Wanttaja's valuation of $3,000 for the medical debt.

[¶ 17] The district court accepted Todd Wanttaja's value of the medical debt in his N.D.R.Ct. 8.3 property and debt listing. See Eberle, 2010 ND 107, ¶ 18, 783 N.W.2d 254. The court's finding is based on the evidence presented at trial and is within the range of evidence presented. We therefore conclude the district court did not abuse its discretion in denying Caroline Wanttaja's new trial motion regarding the amount of the parties' medical debt incurred during the marriage.

## III

[¶ 18] Caroline Wanttaja argues the Dunn County district court erred in concluding it was without authority to address and modify a temporary child support order issued by the Cass County district court. She further argues the court in the divorce proceedings erred in failing to modify the temporary child support order to specifically address an upward deviation for their special-needs child.

[¶ 19] In *Morton Cty. Soc. Serv. Bd. v. Hakanson,* 2003 ND 78, ¶¶ 10–11, 660 N.W.2d 599, this Court stated:

Courts vested with the power to grant divorces and award child support payments have the power to change or modify the amount to be paid or the method by which it is paid whenever the circumstances of the parties have materially changed. *Weigel v. Kraft,* 449 N.W.2d 583 (N.D.1989); *Nygord v. Dietz,* 332 N.W.2d 708, 709–10 (N.D.1983); *Corbin v. Corbin,* 288 N.W.2d 61, 64 (N.D.1980). A court that has jurisdiction over the original child support order does not lose its continuing jurisdiction over child support matters when the support order in the action is transcribed and filed with the clerk of the district court in another county. *Nygord,* 332 N.W.2d at 710. In *Nygord,* this Court stated:

When a support order is transcribed pursuant to Section 14–08–07(2), the provisions of Section 14–08–07 "shall apply as if the support order were issued by the district court of the county to which the support order is transcribed." Sec. 14–08–07(2), N.D.C.C. This section gives the district court of the county to which the support order is transcribed the authority to enforce the support order by issuing a citation for contempt of court against the person who has failed to make the payments. Sec.

14–08–07(1), N.D.C.C. It does not confer upon that court jurisdiction to modify or alter a support order previously issued by the district court of the county which granted the divorce and which has continuing jurisdiction over matters of child custody, care, and support.

332 N.W.2d at 710.

■ The Legislature has since repealed N.D.C.C. § 14–08–07, recodifying the relevant provisions in N.D.C.C. § 14–09–08.1; however, that does not change the holding in *Nygord.* In *Nygord,* this Court stated, "A distinction must be made between the jurisdiction to enforce a transcribed judgment and the jurisdiction to modify such a judgment." *Id.* A support order cannot be modified—only enforced—in the county to which it has been transcribed. *Id.* (citing *Zent v. Zent,* 281 N.W.2d 41 (N.D.1979)).

■ [¶ 20] Caroline Wanttaja argues the Cass County judgment was a "temporary" child support order and the court in Dunn County had jurisdiction to decide child support in the divorce. She also argues that the Trial Court Administration Policy 505(9)(D) states a "divorce order takes precedence over a prior established support order" and that the filing of a divorce order containing a current child support provision terminates the obligation established in the prior support order based on its terms.

[¶ 21] Todd Wanttaja argues that Caroline Wanttaja did not request the Cass County child support order be terminated, did not request a review of that order, and did not amend her pleadings in the divorce to make such a request. He contends she only verbally requested an "upward deviation" in child support at the time of trial because of the minor child's medical condition and because he allegedly made significantly more money than when the original

order was entered. Todd Wanttaja asserts the Cass County child support order was not temporary and has been "imputed" into this case.

[¶ 22] In granting the parties' divorce and establishing primary residential responsibility and parenting time, the Dunn County district court held it was without jurisdiction to modify the existing child support order entered in Cass County. Relying on this Court's decision in *Hakanson*, the district court held that any child support "modification" had to be pursued in the Cass County district court, as the jurisdiction issuing the original child support order for the parties' child.

[¶ 23] The district court's reliance on *Hakanson* is misplaced. In *Hakanson*, 2003 ND 78, ¶ 2, 660 N.W.2d 599, the minor child's parents were not married. After the South Central District Court entered a child support judgment for the child, that judgment was filed in the District Court in Stutsman County for enforcement against an obligor living in Stutsman County. *Id.* at ¶ 3. In the enforcement proceedings, however, the Southeast District Court also modified the obligation in the earlier judgment, and the issue on appeal was whether the Southeast District Court had jurisdiction to modify the judgment, rather than only enforce it. *Id.* at ¶¶ 4, 9. In vacating the order, we concluded the district court originally issuing the child support judgment had the continuing jurisdiction to modify the judgment, while the court to which the judgment had been transcribed only had authority to enforce it. *Id.* at ¶¶ 12–13.

[¶ 24] Unlike *Hakanson*, this case does not involve transcribing a child support judgment to another county for purposes of enforcement. Rather, this case involves a divorce action leading to entry of a final divorce judgment, which necessarily included determining primary residential responsibility under N.D.C.C. ch. 14–09 and awarding parenting time. *See* N.D.C.C. § 14–05–22; *see also* N.D.C.C. § 14–05–23 ("During any time in which an action for separation or divorce is pending, the court, upon application of a party, may issue an order requiring a party to pay such support as may be necessary for the support of a party and minor children of the parties and for the payment of attorney's fees.").

[¶ 25] Under N.D.C.C. § 14–09–08, "[b]oth parents have a mutual duty to support their children." *Richter v. Houser*, 1999 ND 147, ¶ 15, 598 N.W.2d 193. While N.D.C.C. § 14–08–01 provides that "[a]ny married person may maintain an action . . . against the person's spouse for failure on the spouse's part to provide for . . . support of minor children by said husband or wife living with the party bringing suit," N.D.C.C. § 14–08–06 states that "[t]he judgment may be modified or vacated at any time upon the hearing of the parties." In other words, while a married person may maintain a child support action against a spouse, that judgment may be modified or vacated "at any time" after a hearing. As such, we conclude that N.D.C.C. §§ 14–05–22 and 14–05–23 operate to provide the district court in divorce proceedings with original jurisdiction to award appropriate child support under the guidelines for the parties' children as part of a final divorce judgment.

[¶ 26] Moreover, the language of the child support judgment entered in Cass County after this divorce action was begun in Dunn County indicates that it is temporary in nature and would be superceded by a subsequent divorce judgment:

The Defendant must pay child support for M.T.W. in the amount of $939.00 each month, decreasing to the amount of $907.00 per month following the month that the Defendant furnishes the Fargo

Regional Child Support Unit ... with written verification of health insurance coverage for the minor child, *pending the parties' divorce, reconciliation or further Order of the Court.* Payments are due on or before the tenth day of each month starting with the month after the judgment is signed.

(Emphasis added.) By its terms, the temporary child support judgment entered while Todd Wanttaja and Caroline Wanttaja were married, and the divorce action was pending in Dunn County, did not divest the Dunn County divorce court of jurisdiction to award child support as part of the divorce judgment.

[¶ 27] Our conclusion in this case is also consistent with N.D.R.Ct. 8.14, which this Court adopted, effective January 1, 2016. *See* Order of Adoption, No. 20150092 (Nov. 6, 2015). Rule 8.14, N.D.R.Ct., addresses termination of earlier child support orders when a court subsequently changes primary residential responsibility:

> Unless otherwise specified by court order, a monthly child support obligation included in an order issued by a North Dakota court will terminate if the obligor under the order is awarded primary residential responsibility of the child or children on whose behalf the obligation is owed.
>
> *This rule applies when primary residential responsibility is changed or granted by a North Dakota court in:*
>
> (1) the same civil action as the previous support order;
>
> (2) a separate civil action in the same county; or
>
> (3) *a separate civil action in a different county.*
>
> If primary residential responsibility is changed or granted in a separate civil action, the party awarded primary residential responsibility must file a copy of

the order awarding primary residential responsibility in the prior action.

(Emphasis added.)

[¶ 28] In this case, rather than proceedings to enforce the earlier child support order, the district court granted the parties a divorce and established the primary residential responsibility of their child as part of the divorce proceedings. While not empowered to retroactively modify an existing child support order, *see* N.D.C.C. § 14–08.1–05(1)(c), we conclude the Dunn County district court had original jurisdiction to enter a child support order in conjunction with the divorce proceeding, superceding the temporary order entered in Cass County district court while the divorce was pending and the parties were still married. We therefore conclude the court erred as a matter of law in refusing to address the issue of child support.

[¶ 29] We reverse and remand for the district court to consider and award appropriate child support under the guidelines as a part of the divorce judgment.

## IV

[¶ 30] Caroline Wanttaja argues that the district court erred in not granting her request for attorney fees.

[¶ 31] Under N.D.C.C. § 14–05–23, the district court has broad discretion to award attorney fees in divorce proceedings. *Bertsch v. Bertsch*, 2006 ND 31, ¶ 8, 710 N.W.2d 113; *Reiser v. Reiser*, 2001 ND 6, ¶ 15, 621 N.W.2d 348. "A district court abuses its discretion if it misinterprets or misapplies the law." *Bertsch*, at ¶ 8. This Court has also provided guidance for district courts to award attorney fees under N.D.C.C. § 14–05–23:

> In deciding whether to award attorney fees in a divorce action, the trial court

must balance one [party's] needs against the other [party's] ability to pay. The court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party unreasonably increased the time spent on the case. An award of attorney fees requires specific findings supported by evidence of the parties' financial conditions and needs.

*Reiser,* at ¶ 15 (citations omitted).

 [¶ 32] In rejecting Caroline Wanttaja's request for attorney fees, the district court said the record indicated Caroline Wanttaja had not been working, Todd Wanttaja had steady employment, and the parties had little property and some debt that would be allocated between them. The court also stated the property and debt distribution suggested each party would leave the marriage with responsibility for marital debts. The court held, however, that "[t]his does not suggest Todd necessarily has the ability to pay Caroline's fees." In its analysis, the district court commented on an exhibit purporting to show attorney fees Caroline Wanttaja had incurred, finding insufficient evidence that the fees were incurred as a result of this divorce action based on a lack of dates, finding some of the fees could have been avoided had she retained legal counsel "closer to Dickinson" and finding no evidence indicated whether she had "attempted to retain Legal Aid in this matter." The court concluded, "As such, the Court is without sufficient evidence to support a finding that the attorneys fees are reasonable and legitimate, whether Caroline indeed has the inability to pay them, or whether Todd has the ability to pay them."

[¶ 33] We have said that "[i]n awarding attorney's fees, fault is a consideration only to the extent that one party has un-

reasonably escalated the fees." *Bertsch,* 2006 ND 31, ¶ 10, 710 N.W.2d 113. The district court's decision to reject Caroline Wanttaja's attorney fee request, however, suggests fault on her part for retaining counsel from Fargo, rather than near Dickinson, and for not seeking a "legal aid" attorney. It is not clear how the court's statement impacted the court's assessment of her needs. We note that courts have held an award of attorney fees appropriate even in cases when the party is represented by a pro bono attorney. *See, e.g., Henriquez v. Henriquez,* 413 Md. 287, 992 A.2d 446, 455–56 (2010); *Miller v. Wilfong,* 121 Nev. 619, 119 P.3d 727, 729 (2005); *Pearson v. Pearson* 200 W.Va. 139, 488 S.E.2d 414, 424–26 (1997); *In re Marriage of Ward,* 3 Cal.App.4th 618, 4 Cal. Rptr.2d 365, 368–70 (1992); *In re Marriage of Swink,* 807 P.2d 1245, 1248 (Colo. Ct.App.1991); *Lee v. Green,* 574 A.2d 857, 859–60 (Del.1990); *Hale v. Hale,* 772 S.W.2d 628, 630 (Ky.1989). Moreover, N.D.C.C. § 14–05–23 does not provide that an indigent party's failure to retain a legal aid attorney or a local attorney is a proper basis to find an unreasonable escalation of fees, so as to constitute fault.

[¶ 34] Caroline Wanttaja argues that Todd Wanttaja's conduct actually escalated the fees in this case. She asserts he "defrauded" her by moving her to the Minneapolis area and promising her support, selling their family home and keeping all proceeds, thereby causing her and their minor child to be destitute. She asserts he then commenced this divorce action in a county hundreds of miles from her, causing her additional hardship. She contends he allowed her car to be repossessed, refused to pay child support for their special needs child, refused to pay spousal maintenance, and refused to pay for a car for her, all of which necessitated the trial in this case.

[¶ 35] Based on our review of the record, we conclude the district court misapplied the law in its analysis when it considered whether Caroline Wanttaja had attempted to retain a local attorney or "legal aid" attorney as apparently unreasonably escalating her attorney fees or establishing her need in this case. There is evidence in the record showing that Caroline Wanttaja has incurred attorney fees and that she has definite needs, which must be balanced against Todd Wanttaja's ability to pay. We therefore conclude the district court abused its discretion in denying her request for attorney fees.

[¶ 36] We reverse and remand for the district court to consider an award of attorney fees to Caroline Wanttaja under N.D.C.C. § 14-05-23 and based on the standards as set forth in our case law.

### V

[¶ 37] The district court judgment and order denying Caroline Wanttaja's motion for a new trial are affirmed in part, and reversed in part, and the case is remanded for further proceedings.

[¶ 38] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.