2017 ND 214

**Nina Maureen Gabrielle LEWIS, Plaintiff and Appellee**

v.

**John Gordon SMART, Defendant and Appellant**

and

**Dashiell J. Lewis Smart, Intervenor**

No. 20160341

Supreme Court of North Dakota.

Filed 8/29/2017

Rehearing Denied Oct. 17, 2017

Patti J. Jensen, East Grand Forks, Minnesota, for plaintiff and appellee.

DeWayne A. Johnston (argued) and Jacey L. Johnston (appeared), Grand Forks, North Dakota, for defendant and appellant.

Tufte, Justice.

[¶1] John Smart appeals from an amended divorce judgment and from an order and judgment denying his motion for relief under N.D.R.Civ.P. 60. We conclude that the district court's equitable redistribution of the marital property was not clearly erroneous and that the court did not abuse its discretion in entering the amended judgment, denying Smart's subsequent post-judgment motions, and awarding attorney's fees. We affirm.

I

[¶2] In 1999, Smart and Nina Lewis were married. In 2012, Lewis sued Smart for divorce, seeking custody of their minor son and equitable division of their assets and allocation of their debts. Smart answered and counterclaimed. In late August 2013, Lewis's father died. In September 2013, after the first day of trial, the parties entered into a stipulated settlement agreement, and a divorce judgment was entered. The court did not address any issues about Lewis's potential inheritance at that time. In December 2013, Smart moved the district court for relief from the judgment, which the court denied.

[¶3] In September 2014, Smart again moved the district court for relief from the judgment under N.D.R.Civ.P. 60, seeking an equitable distribution of Lewis's inheritance. In November 2014, Lewis applied for an order to show cause seeking to find Smart in contempt for not complying with the divorce judgment's terms and conditions. In December 2014, the court granted Smart's N.D.R.Civ.P. 60 motion, reopening the divorce case for the purpose of considering additional marital property from Lewis's inheritance from her father's estate. The court found that the unusual circumstance justified granting Smart's motion and that the prior judge had reserved the issue of inheritance when the stipulated judgment was entered. In December 2014, the court also entered an order requiring Smart to show cause why he should not be held in contempt for failing to comply with the original judgment.

[¶4] In February 2015, the district court denied Smart's request for an ex parte order to have Lewis pay a joint debt owed to a storage company in Grand Forks, which was storing items of personal and trust property addressed in the divorce judgment. The court held that no emer-

gency existed to justify Lewis having to pay the debt. On April 2, 2015, the court began an evidentiary hearing on the parties' respective motions. On April 7, 2015, the court entered an order suspending the evidentiary hearing and joining the parties' son as a party under N.D.R.Civ.P. 19(a)(1)(A). The court found that the son, Dashiell Lewis Smart, was a minor at the time of the divorce, but was over the age of eighteen years at that time, and is a named beneficiary of a personal property trust identified in the parties' divorce judgment.

[¶ 5] On April 21, 2015, the son filed a statement as an intervenor, stating a receiver should be appointed to take possession of trust property and seeking to protect his interest in the trust property addressed in the divorce judgment. In October 2015, the court granted Dashiell Lewis Smart's application for appointment of a receiver. An appointed receiver subsequently attempted to collect personal property in the parents' possession identified in the judgment as subject to the trust and also filed reports with the court. The hearing on the parties' motions was subsequently completed on March 8, 2016.

[¶ 6] On April 25, 2016, the district court entered an order for amended judgment, awarding Lewis the inheritance from her father's estate and finding she had paid debts that had been Smart's partial or full responsibility under the original divorce judgment. In explaining the award, the court found Smart had already received a direct monetary benefit of $164,000 as a result of the death of Lewis's father. The court also found that Smart's conduct after the divorce had resulted in the loss of marital and trust property worth approximately $267,000, had increased expenses to Lewis in the amount of $17,850, and had resulted in unanticipated expenses of about $15,000 to his son. The court ordered that Smart immediately relinquish all trust assets in his possession to Dashiell Lewis Smart or his designee, but allowed Smart to continue to use a 1967 Mercedes–Benz as long as he provided his son with proof of liability insurance. An amended judgment was entered in May 2016.

[¶ 7] In June 2016, Smart moved for relief from the amended judgment under N.D.R.Civ.P. 52, 59, and 60. Lewis moved to dismiss Smart's motion, alleging it was devoid of any factual or legal authority to support his claim. The court concluded his motion under Rules 52 and 59 was untimely and improperly served, denied his motion under Rule 60(b)(3) and (b)(6), and granted Lewis attorney's fees of $2,500 given Smart's escalating the fees and prolonging the case. In August 2016, the court entered a final judgment denying Smart's motion for relief.

II

[¶ 8] Smart argues the district court erred in distributing the marital estate by assessing him for alleged waste. He argues the court also erred by going beyond his motion, which sought only distribution of Lewis's inheritance, to amend the terms of the original stipulated divorce judgment.

[¶ 9] A district court's decision whether to grant relief under N.D.R.Civ.P. 60(b) will not be overturned on appeal absent an abuse of discretion. *Knutson v. Knutson*, 2002 ND 29, ¶ 7, 639 N.W.2d 495. "We do not determine whether the court was substantively correct in entering the judgment from which relief is sought, but determine only whether the court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not established." *Id.* A district court abuses its discretion when it acts in an arbitrary, unconscionable, or

unreasonable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Id.* "Rule 60(b) attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done, and, accordingly, the rule should be invoked only when extraordinary circumstances are present." *Id.*

[¶ 10] Under N.D.C.C. § 14–05–24(1), a district court must equitably distribute the parties' marital property and debts. "After including all of the marital assets and debts, the district court must apply the *Ruff–Fischer* guidelines to divide the property." *Wanttaja v. Wanttaja*, 2016 ND 14, ¶ 8, 873 N.W.2d 911 (citation omitted). The *Ruff–Fischer* guidelines require the court to consider the following factors:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Rebel v. Rebel*, 2013 ND 116, ¶ 7, 833 N.W.2d 442 (quoting *Kosobud v. Kosobud*, 2012 ND 122, ¶ 6, 817 N.W.2d 384). The court's distribution presents a finding of fact that will not be overturned unless clearly erroneous. *Wanttaja*, at ¶ 9. "[F]indings of fact are presumptively correct." *Id.* (citation omitted). "The party challenging a court's finding of fact on appeal has the burden of showing that a finding is clearly erroneous." *Id.* (citing *Rebel*, at ¶ 17). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, although there is some evidence to support it, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Id.*

[¶ 11] "We have repeatedly held that property brought into the marriage by one party, and separate property acquired by gift, inheritance, or otherwise, must be included in the marital estate and is subject to distribution." *Ulsaker v. White*, 2006 ND 133, ¶ 12, 717 N.W.2d 567 (citation omitted). Generally, a district court does not retain continuing jurisdiction to modify a final property distribution. *Keita v. Keita*, 2012 ND 234, ¶ 28, 823 N.W.2d 726. Under N.D.C.C. § 14–05–24(3), however, a court may redistribute property and debts in a post-judgment proceeding when a party fails to comply with an order distributing property and debts. *See Keita*, at ¶ 30; *see also* N.D.C.C. § 14–05–25.1 (failure to comply with divorce decree distributing parties' property constitutes contempt of court).

[¶ 12] The district court's distribution of property and debts also includes recognizing valid settlement agreements. *Eberle v. Eberle*, 2009 ND 107, ¶ 15, 766 N.W.2d 477. We encourage "peaceful settlements of disputes in divorce matters, and the strong public policy favoring prompt and peaceful resolution of divorce disputes generates judicial favor of the adoption of a stipulated agreement of the parties." *Knutson*, 2002 ND 29, ¶ 8, 639 N.W.2d 495; *see also Eberle*, 2009 ND 107, ¶ 15, 766 N.W.2d 477. When the judgment to be set aside is entered on the basis of the parties' stipulation, "the party challenging the judgment has the additional burden of showing that under the law of contracts there is justification for setting aside the stipulation." *Knutson*, at ¶ 8. In deciding whether to enforce a settlement agreement between divorcing parties, the district court should consider whether the

agreement is free from mistake, duress, menace, fraud, or undue influence and whether the agreement is unconscionable. *Id.*

[¶ 13] Even when parties enter into a settlement agreement, however, a district court retains the duty to make a just and proper distribution of the marital estate under N.D.C.C. § 14–05–24. We have explained that district courts should not "blindly accept" property settlement agreements. *See Kramer v. Kramer*, 2006 ND 64, ¶ 7, 711 N.W.2d 164; *Weber v. Weber*, 548 N.W.2d 781, 783 (N.D. 1996). For example, "[a] district court's duty to make an equitable distribution of marital property under N.D.C.C. § 14–05–24 includes the authority to decide whether a settlement agreement was executed as a result of mistake, duress, menace, fraud, or undue influence under N.D.C.C. § 9–09–02(1)." *Kramer*, at ¶ 7.

## A

[¶ 14] Smart contends the district court erred in "assessing" him $267,000 in alleged waste for not paying a storage fee when he was unable to do so, when Lewis had the means to pay the storage fee, and when the property in storage was not marital property. He further contends that the court should have required Lewis to pay him $267,000 because the court, in dividing the marital estate, erroneously subtracted $267,000, thus imposing an "unwarranted" sanction on him. He asserts the original judgment was entered by agreement and stipulation on grounds of "irreconcilable differences" and not the parties' conduct. He further asserts that Lewis was the named trustee of the trust and that since no successor trustee had been named, she had a fiduciary duty to protect the trust property.

[¶ 15] Smart also contends the district court erred in amending the original di-

vorce judgment, because the change "disturbed" the terms and benefits that he enjoyed under the parties' original contractual stipulation. He asserts the court reopened the divorce judgment only for the "sole purpose" of considering additional marital property as a result of Lewis's subsequent inheritance. He argues the court did not have license to go back and essentially rewrite the original agreement to Smart's detriment while Lewis received her inheritance of approximately $937,000.

[¶ 16] Lewis responds that the district court's distribution of the marital estate was not clearly erroneous. She contends the court did not clearly err in analyzing the *Ruff–Fischer* guidelines and in assessing the impact of Smart's economic waste. She asserts that she had already made additional payments on Smart's behalf from the inheritance. She argues a finding of irreconcilable differences does not preclude the court from considering the parties' conduct in distributing the marital estate. She contends the court properly heard issues regarding her application for a show-cause order and Smart's Rule 60 motion during the same hearing, and he did not object or raise the issue in the district court. She argues the court's order denying him ex parte relief is not subject to review on appeal. Lewis further asserts she is no longer the trustee of Smart's personal property trust.

[¶ 17] The district court reopened the case to consider Lewis's inheritance as part of the equitable distribution of the parties' marital estate. The court applied the *Ruff–Fischer* guidelines and made extensive additional findings under each of the statutory factors to support its decision to award the inheritance to Lewis. While Smart contends he was "assessed" for his alleged waste, the court in its analysis under the guidelines considered the extent to which he had contributed to his own

difficult financial circumstances, *i.e.*, the wasteful disposition of trust property and the extent to which he already had benefitted from Lewis's expenditures from the inheritance.

[¶ 18] Specifically, using the values in the parties' Rule 8.3 statement, the district court found Lewis had been awarded about $49,000 in personal property and $23,000 in marital debt, while Smart was awarded about $60,000 in personal property and $138,000 in marital debt. The court further found Smart had been awarded the use and possession of trust property consisting of eight purported Rolex watches valued at approximately $102,300, two vehicles valued at $31,000, and numerous pieces of furniture Smart valued at over $460,000.

[¶ 19] The district court also found that the parties' marital home was in foreclosure at the time of divorce, that Smart contracted with the storage company to move and store the remaining household goods and furnishings, and that the parties agreed to share equally in the storage expenses. The court found, however, that Smart refused to pay his share of the storage fees, claiming he did not have the funds, and that many of the items in storage consisted of property belonging to the personal property trust whose beneficiary was the parties' son. The stored property was subsequently sold at public auction.

[¶ 20] The district court found that while Lewis had cooperated with the receiver appointed to take possession and protect the trust property, Smart did not initially cooperate, resulting in additional expenses. The court also found that of the eight watches Smart turned over to the receiver, none were confirmed to be Rolexes and the receiver reported the watches had a total value of $400 to $500. The court found the location of remaining watches was unknown at that time.

[¶ 21] The district court valued Lewis's share of her father's estate and non-probate assets at approximately $937,000. However, the court found Smart had not paid any of his marital debt obligations in the original divorce judgment, while Lewis had paid a significant amount toward Smart's obligations, including tax debt, medical debt, and various other debts. While Smart sought thirty percent of Lewis's inheritance plus $17,000 for attorney's fees, Lewis asked the court to deny his request and award her a judgment for the marital debt she had paid that was Smart's responsibility under the original judgment, to order Smart to relinquish trust assets in his possession, and to order a sale of trust assets to pay fees incurred related to the trust assets.

[¶ 22] The district court found that while Smart had entered into the initial stipulation and agreed to assume marital debt in the amount of $140,000, he failed to make any payments and the creditors sought payment from Lewis. The court found she had paid approximately $96,000 of Smart's obligations; Smart refused to pay a bank debt, resulting in the vehicle awarded to Lewis being repossessed; and Smart also refused to pay for the moving and storage expenses, resulting in the loss of significant marital property and trust assets which the court valued in excess of $260,000. The court found Smart refused to sell personal property in his possession to raise funds, refused to look for employment, and had been less than candid in this action, finding Smart admitted he still had a Rolex in his suite in London, England. The court also found he was in possession of a lake home that has about $90,000 of equity.

[¶ 23] After considering the *Ruff–Fischer* factors, the district court found Smart had already received a direct monetary benefit of $164,000 from the use of proper-

ty Lewis inherited from her father. The court also found Smart's actions since the divorce had resulted in a loss of marital property and trust property worth approximately $267,000, increased expenses to Lewis by $17,850, and caused unanticipated expenses of about $15,000 to their son. The court therefore ordered that Smart relinquish all trust assets in his possession to his son or his son's designee, denied Lewis's request for a money judgment against Smart for his marital debts she had paid, and denied Smart's request for a percentage of Lewis's inheritance.

[¶ 24] On the basis of our review, we conclude the district court's findings regarding disposition of the inheritance and redistribution of the marital estate are not clearly erroneous. The court made extensive findings based on the evidence adduced at the evidentiary hearing, focusing on Smart's multiple failures to comply with and perform under the original divorce judgment. Although Smart complains on appeal that the court went beyond the specific relief he requested when he sought to reopen the stipulated judgment under N.D.R.Civ.P. 60(b), the district court retained broad authority to devise an equitable distribution of the marital estate once the original judgment was reopened. *See* N.D.C.C. § 14–05–24(1) and (3). Where a party has hidden assets and has chosen not to comply with the court's distribution order, the court may alter an agreement incorporated in a judgment to restore equity despite that party's protestations. *Cf. Terry v. Terry*, 2002 ND 2, ¶ 4, 638 N.W.2d 11 ("If the judgment sought to be set aside is entered pursuant to a stipulation of the parties, the party challenging the judgment has the additional burden of showing that under the law of contracts there is justification for setting aside the stipulation.").

[¶ 25] We conclude the district court's findings regarding the redistribution of the parties' marital estate are not clearly erroneous and the court did not abuse its discretion in reopening the original judgment under N.D.R.Civ.P. 60(b) and granting the relief provided in the amended judgment. We further conclude the court did not abuse its discretion in denying Smart's post-judgment motion.

B

[¶ 26] Smart contends the district court erred in asserting "jurisdiction" over the non-marital trust, because the trust property did not belong to either divorcing party and was distinguished in the Rule 8.3 disclosure from property awarded in the original judgment.

[¶ 27] Generally, we have said trusts are included as marital property subject to equitable distribution by the district court. *Holte v. Holte*, 2013 ND 174, ¶ 32, 837 N.W.2d 894. "[L]ike pensions or retirement plans, a trial court may divide a trust by awarding the present value of the benefits." *Id.* (citation omitted). To be considered a marital asset, however, the property must be a present property interest rather than a mere expectancy. *Id.* The amended judgment in this case contains the following relevant provision regarding the trust property:

The Defendant shall immediately relinquish all trust assets in his possession to Dashiell Lewis–Smart or his designee. The Defendant shall be entitled to continue to use the 1967 Mercedes Benz as long as he provides Dashiell Lewis–Smart with proof of liability insurance coverage on the vehicle now and in the future. With the assistance of the Plaintiff and any professionals retained by the trust, sufficient Trust Property shall be sold to pay Dashiell Lewis–Smart's attorney's fees, receiver fees and to re-

imburse the Plaintiff for the funds she has expended on behalf of the trust. The Court noted that the trust may need to retain an expert experienced in appraising and selling the trust assets. Any fees incurred in selling trust assets shall be paid out of the proceeds.

Although the parties disagree whether Lewis remains the trustee, we note both the original judgment and the amended judgment state Lewis is the trustee of the trust, the parties' son is the beneficiary, and Lewis must resign from her role as trustee "[u]pon the acceptance of the duties of trustee by a successor trust[ee]." Neither party has represented to this Court that a successor trustee has been named.

[¶ 28] Relying on *Murphy v. Rossow*, 2010 ND 162, ¶ 12, 787 N.W.2d 746, Smart argues the district court did not have "jurisdiction" over the personal property subject to the trust. Smart did not specifically raise the issue of the court's jurisdiction in his post-judgment motion. Nevertheless, we conclude Smart's reliance on *Murphy* is misplaced. In *Murphy*, we held the district court erred when it divided trust minerals between the divorcing parties "because the trust minerals were not owned by either party at the time of divorce." *Id.* We reversed the distribution of the trust minerals and remanded for the court to determine the value of the parties' beneficiary interest in the family trust at the time of divorce. *Id.*

[¶ 29] Here, unlike *Murphy*, the district court did not divide the ownership of the personal property that is subject to the trust. Rather, we construe the amended judgment to address only the further use and possession of the trust property, which had been previously addressed and awarded in the original stipulated divorce judgment. As discussed, the district court appointed a receiver at the request of Smart's son who had intervened in the case. The court also made numerous findings of fact concerning Smart's improper disposition or waste of trust assets. There may be unresolved issues regarding the trust, such as determining the competing claims of who is the trustee and locating known or suspected trust assets. Although separate proceedings related to the trust may be contemplated, the issues before us are not contingent on resolving those issues, because the court's amended judgment in this case affects only the beneficiary interest of use and possession of the trust assets and does not change ownership of the trust assets or construe the trust documents.

[¶ 30] We conclude the district court did not err in its amended judgment by addressing the possession and use of the personal property in trust.

### III

[¶ 31] Smart argues the district court erred in awarding Lewis attorney's fees for the post-judgment motion, because the court failed to considered the parties' respective needs and ability to pay.

[¶ 32] Under N.D.C.C. § 14–05–23, the district court has broad discretion to award attorney's fees in divorce proceedings. *Wanttaja*, 2016 ND 14, ¶ 31, 873 N.W.2d 911. Under N.D.C.C. § 14–05–23, the primary standard governing an award of attorney's fees is consideration of one spouse's needs and the other spouse's ability to pay. *Kelly v. Kelly*, 2011 ND 167, ¶ 34, 806 N.W.2d 133. Under that statute, this Court has also recognized that "where a party's actions have unreasonably increased the time spent on a case, attorney fees may be appropriate." *Id.* We further explained:

A district court also has inherent authority to sanction a litigant for miscon-

duct. Sanctions must be reasonably proportionate to the misconduct. When sanctioning a party for misconduct, a district court should consider and make findings on the culpability or state of mind of the party against whom sanctions are being imposed, the prejudice to the moving party, the impact of the prejudice on the moving party's ability to present or defend the party's case, and the availability of less severe sanctions.

A district court has discretion in awarding attorney fees as a sanction in divorce actions. An award of attorney fees as a sanction will not be disturbed on appeal unless the court abuses its discretion. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination.

*Kelly*, at ¶¶ 35–36 (citations omitted); *see also Kosobud v. Kosobud*, 2012 ND 122, ¶ 21, 817 N.W.2d 384.

[¶ 33] In its order denying Smart's post-judgment motion, the district court explained Smart's post-judgment filings had resulted in Lewis incurring unnecessary attorney's fees and prolonging the case. The court found no rational justification for Smart's failure to meet deadlines, failure to comply with the rules, or failure to support his motions with legal authority. The court found an award of attorney's fees of $2,500 to Lewis was reasonable under the circumstances. Because the district court awarded attorney fees under its inherent authority to impose a sanction for post-trial filings having "no rational justification," it was not required to consider need and ability to pay, as it would if the fees were awarded only under N.D.C.C. § 14–05–23.

[¶ 34] On the basis of our review, we conclude the court did not abuse its discretion in sanctioning Smart for the post-judgment filings and in awarding Lewis $2,500 in attorney's fees.

IV

[¶ 35] We have considered Smart's remaining arguments and conclude they are either without merit or unnecessary to our decision. The amended divorce judgment and the subsequent order and judgment denying post-judgment relief are affirmed.

[¶ 36] Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner S.J.

[¶ 37] The Honorable Jon J. Jensen was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Carol Ronning Kapsner, sitting.